UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CLARENDON NATIONAL INSURANCE COMPANY<br>    Plaintiff<br><br>V.<br><br>TIMOTHY McNAMARA, ET AL<br>    Defendants | C.A. NO. 05-11056-JLT |

**MEMORANDUM IN SUPPORT OF DEFENDANT
TIMOTHY McNAMARA'S MOTION TO DISMISS**

**I.     This Action Was Brought Prematurely and Is Moot**

In support of the Motion to Dismiss the defendant, Timothy McNamara ("McNamara"), states as follows:

1.     On October 9, 2002, McNamara's condominium, Unit C14 at Brookline Lofts Condominium, was damaged by reason of a defective sprinkler which caused extensive damage to the unit and personal property.

2.     It appears according to the First Amended Complaint that Clarendon National Insurance Company ("Clarendon") has attempted to seek a declaratory judgment with respect to its liability under a certain insurance policy entitled Commercial Inland Marine Insurance Policy No. BHP 189700, which is attached to the Complaint as Exhibit A.

3.      McNamara has previously filed an Answer and in Paragraph 20 stated that he does not intend to bring suit at this time against Clarendon, but reserves his right to proceed against Clarendon in the event Clarendon is determined to be liable as an insurer of 74 Kent Street, LLC ("74 Kent").

4.     McNamara has now brought an action against 74 Kent in the Suffolk Superior Court, <u>McNamara v. 74 Kent Street, LLC</u>, Docket No. C.A. 05-3909 (the "Suffolk Action"), a copy of the complaint being attached hereto as Exhibit "A." Clarendon is not a party to that action and McNamara seeks relief against

74 Kent for damage to his personal and real property resulting from the aforesaid incident of October 9, 2002.

5. Clarendon has represented to McNamara's counsel that the aforesaid Commercial Inland Marine Policy No. BHP 189700 does not afford any insurance for the claims asserted by McNamara in the Suffolk Action, but that another policy issued by Clarendon, entitled Commercial General Liability Policy No. BHL 189700, may afford coverage with regard to McNamara's claims in the Suffolk Action.

6. It appears clearly that Clarendon has prematurely brought this instant action based upon an insurance policy, the Commercial Inland Marine Policy No. BHP 189700, which is not relevant nor material to McNamara's claims against 74 Kent.

7. Clarendon and 74 Kent have now entered into an agreement seeking a stipulation from this Court with respect to a declaratory judgment as to 74 Kent, stating essentially that 74 Kent cannot recover from Clarendon on the Commercial Inland Marine Policy No. BHP 189700, but that said declaratory judgment shall not affect claims under the other Clarendon policy No. BHL 189700.

8. It appears further that not only was this action brought prematurely, but the issues are moot and that there is no issue in controversy with respect to McNamara since he has now brought his claims against 74 Kent in the Suffolk Action.

## II. **The Court Should Dismiss Under the Abstention Doctrine**

Since there is now an action pending in the state court, the Suffolk Action, McNamara respectfully urges that this Court may also exercise its discretion to dismiss this case on the grounds of abstention.

The abstention doctrine has evolved permitting the withholding of federal jurisdiction over actions commenced in the U.S. District Court in favor of concurrent state-court proceedings, <u>Colorado River Water Conservation District v. U.S.</u>, 424 U.S. 800 (1976).  Some of the factors which are considered by the

courts in withholding Federal jurisdiction are to avoid piece meal litigation, whether state law provides for a decision on the merits, and the adequacy of the state court proceedings to protect the rights of the litigant parties.

Since the claims of McNamara against 74 Kent have been set forth in the Suffolk Action, allowing this case to continue would add to rather than avoid piece meal litigation.  There is no showing and there cannot be any showing by Clarendon as to any inadequacy in the state court proceedings.  As the court stated in <u>Solomon S.A. v. Scott USA L.P.</u>, 117 FRD 320, 321 (D.Mass. 1987):

> A district court may, in its discretion, defer or abate proceedings where another suit, involving identical issues, is pending in either a federal or state court, and where it would be duplicative, uneconomical, and vexatious to proceed otherwise.  (citations omitted)

Therefore, McNamara respectfully requests the Court, notwithstanding the other arguments herein, to dismiss this action as against McNamara.

September 29, 2005                                       Attorney for defendant,
                                                         Timothy McNamara,


                                                         ___/s/Roger S. Davis_____
                                                         Roger S. Davis
                                                         BBO No. 116320
                                                         DAVIS & RUBIN
                                                         One Bowdoin Square
                                                         Suite 901
                                                         Boston, MA  02114-2919
                                                         (617) 742-4300

MCNAMARA4:CNIC:MEMODISMPDF2

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                                                           SUPERIOR COURT
                                                                      C.A. NO. _____

TIMOTHY McNAMARA )
    Plaintiff )
)
V. ) **COMPLAINT AND**
) **DEMAND FOR JURY TRIAL**
74 KENT STREET, LLC )
    Defendant )

**GENERAL ALLEGATIONS – Common To All Counts**

1. The plaintiff is Timothy McNamara ("McNamara") a resident of Boston, Suffolk County, Massachusetts.

2. The defendant is 74 Kent Street, LLC a limited liability company having a usual place of business at Cambridge, Middlesex County, Massachusetts.

3. At all times relevant hereto, McNamara was the owner of the condominium unit known as C14 situated at 74 Kent Street, Brookline, Massachusetts.

4. At all times relevant hereto 74 Kent Street, LLC, was the builder and developer of the condominium complex at 74 Kent Street, Brookline, which included the aforesaid Unit C14.

5. At or about February 1, 2002, Steven Wolberg ("Wolberg") entered into an agreement with 74 Kent Street, LLC wherein 74 Kent Street, LLC agreed to transfer Unit C14 to Wolberg.

6. At the time of the aforesaid agreement between 74 Kent Street, LLC and Wolberg, 74 Kent Street had adopted a standard form of limited warranty, entitled Brookline Village Lofts Condominium Limited Warranty (Exhibit "A" hereto).

7. As part of said Warranty, Paragraph 7, 74 Kent Street, LLC warranted the operation of the electrical and plumbing systems for a period of one year from the date of the closing.

8. On or about February 1, 2002, McNamara entered into an agreement to purchase Unit C14 from Wolberg for the sum of $620,000.

9. On February 25, 2002, 74 Kent Street, LLC deeded Unit C14 to Wolberg.

10. Wolberg did not occupy Unit C14 but pursuant to his agreement with McNamara, on April 1, 2002, conveyed title to Unit C14 to McNamara.

11. At the time of the closing of the sale of Unit C14 from Wolberg to McNamara, Wolberg assigned to McNamara the aforesaid Warranty from 74 Kent Street, LLC.

12. On October 9, 2002, a defective sprinkler in the plumbing system installed in Unit C14 at 74 Kent Street, malfunctioned, causing substantial damage to Unit C14 and to McNamara's personal property.

13. By letter dated November 22, 2002, McNamara gave notice to 74 Kent Street, LLC with respect to the incident of October 9, 2002 and the damage sustained by McNamara.

**COUNT I – Breach of Warranty**

14. 74 Kent Street, LLC has neglected and refused to honor its warranty and is therefore in breach of said warranty, as a result of which McNamara has sustained damage as aforesaid.

> WHEREFORE, McNamara prays as follows:
> (1) That the Court determine the amount of damages sustained by McNamara and award judgment against 74 Kent Street, LLC together with interest and costs as provided by law;
> (2) For his attorney's fees, costs and expenses;
> (3) For such other relief as the Court may deem proper.

**COUNT II – Negligence**

15. Paragraphs 1 through 14 are incorporated herein by reference.

16. The installation of the sprinkler system in Unit C14 was performed negligently and carelessly by 74 Kent Street, LLC.

17. As a result of the negligence of 74 Kent Street, LLC, McNamara has sustained damage as aforesaid.

WHEREFORE, McNamara prays as follows:

(1) That the Court determine the amount of damages sustained by McNamara and award judgment against 74 Kent Street, LLC together with interest and costs as provided by law;

(2) For his attorney's fees, costs and expenses;

(3) For such other relief as the Court may deem proper.

**COUNT III – Breach of Warranty of Habitability**

18. Paragraphs 1 through 17 are incorporated herein by reference.

19. 74 Kent Street, LLC has breached the implied warranty of habitability as a result of which McNamara has sustained damage as aforesaid.

WHEREFORE, McNamara prays as follows:

(1) That the Court determine the amount of damages sustained by McNamara and award judgment against 74 Kent Street, LLC together with interest and costs as provided by law;

(2) For his attorney's fees, costs and expenses;

(3) For such other relief as the Court may deem proper.

**COUNT IV – Chapter 93A § 9**

20. Paragraphs 1 through 20 are incorporated herein by reference.

21. At all times relevant hereto 74 Kent Street, LLC has engaged in the conduct of a trade or commerce as defined in c.93A §1, et seq.

22. The acts and practices of 74 Kent Street, LLC, including its refusal to honor its warranties, constitutes a violation of c.93A §9, and such acts and practices were committed willfully and knowingly.

23. Pursuant to c.93A §9, McNamara made demand upon 74 Kent Street, LLC for relief by letter dated August 8, 2005 (Exhibit "B" hereto), however, 74 Kent Street, LLC has refused to tender relief or settlement within the thirty (30) day period as provided by §9.

WHEREFORE, McNamara prays as follows:

 (1) That the Court determine the damages sustained by McNamara and award treble the amount together with interest, attorney's fees, costs and expenses;

 (2) For such other relief as the Court may deem proper.

**<u>DEMAND FOR JURY TRIAL</u>**

The plaintiff demands trial by jury as to all issues properly triable by a jury.

September ____, 2005            Attorney for plaintiff,

                    _____
                    Roger S. Davis
                    BBO No. 116320
                    DAVIS & RUBIN
                    One Bowdoin Square
                    Suite 901
                    Boston, MA  02114-2919
                    (617) 742-4300

MCNAMARA4:74KS:COMPLNT

# EXHIBIT A
## BROOKLINE VILLAGE LOFTS CONDOMINIUM
## LIMITED WARRANTY

SELLER: 74 Kent Street L.L.C. ("Seller" or "We")

BUYER: STEVEN WOLBERG

DATE: February 1, 2002

Seller hereby makes the following warranties to Buyer:

1. We warrant that the concrete foundation and basement garage floor will be free from seepage and leakage of surface water for a period of one year from the closing transaction. All major cracks that emit water are covered from one year from the date of the closing transaction. The lot has been graded to shed water away from the foundation. The Seller shall not be responsible for seepage into the Condominium as a result of any grade changes as a result of new landscaping or snow and ice build-up after the date of closing.

2. We warrant against leaking roofs by reason of defects in material or workmanship for a period of one year from the closing transaction, but we expressly do not guarantee against leaks caused by reason of ice back-up. It is the responsibility of the Condominium to ensure that roofs are free of snow and ice and, free passage in gutters and downspouts at all times. Damage, if any, caused by windblown rain or snow through roof, gable or soffit vents and louvers into attic space is not covered by the provisions of this Warranty.

3. Seller will properly prepare landscaping and lawns, but we expressly do not warrant against problems caused by the Condominium's failure to properly water and care for the same.

4. All appliances supplied by the builder are guaranteed and/or warranted by the manufacturer and no guarantee or warranty is made or intended by the builder. Said warranties shall be assigned to Buyer as provided in Paragraph (26) of the Purchase and Sale Agreement to which this Warranty is attached.

5. We warrant that the doors and windows installed in the Condominium are of excellent quality, however, it must be understood that wood swells and shrinks in accordance with moisture and humidity. There is an abnormal amount of moisture in a new home, and because of the nature of wood, drywall and plaster, you may experience some sticking and binding. To make every door and window in the Condominium completely free from any sticking and binding at the outset would only result in their being loose and ill fitting in the future. Similarly, and for the same reasons, hairline cracks may develop at corners and around doors and windows in all surfaces. Unfortunately, it is impossible to ensure that such cracks will not occur due to the nature of the materials and the effects of the weather upon them. Hairline cracks and seams, therefore, are not covered under the terms of this Warranty as they do not represent a structural failure. Structural failures are covered by this Warranty.

23

08/03/1995  1:04   6179593444                WOLBERG                              PAGE  03

6. The heating system is warranted to heat the Unit to a temperature of seventy degrees at the thermostat when the outside temperature is at zero degrees with winds at five miles per hour. This Warranty is for a period of one year from the date of the closing transaction. Free heating adjustments will be made for ninety days following the onset of the first heating season except in instances where the thermostat fails to reach seventy degrees with an outside temperature of zero degrees with winds at five miles per hour, in which case the one year Warranty applies.

7. The operation of the electrical, plumbing and sewerage disposal systems is warranted for a period of one year from the date of the closing transaction, except that if the problem is found to have been caused by Buyer's introducing any foreign object into the system, the Buyer will pay the entire cost of correction. In addition to the foregoing, dripping faucets, sewerage disposal, or loose fixtures occurring within ninety days of the date of the closing transaction will be repaired by the builder.

8. Flooring is warranted against swelling and buckling for a period of one year from the date of the closing transaction. Minor shrinkage and separation of floorboards is normal and is, therefore, not covered under the provisions of the Warranty. Should you experience some such shrinkage and separation of the floorboards, this condition can be retarded by raising the relative humidity within the Unit.

To the extent that any of the foregoing warranties relate to the Common Areas and Facilities Seller hereby makes such warranties to the Condominium Trust and agrees that said warranties shall extend for one year from the date of substantial completion of said Common Areas and Facilities.

In the event that matters requiring our attention arise after you have moved into your new home, we ask that you communicate these to us in writing to ensure a prompt response. We wish to point out however, that most of the work and materials in our homes are provided by sub-contractors and, while we do our best to make adjustments and corrections as quickly as possible, it is not always possible to schedule the necessary personnel immediately upon the receipt of any such request.

We wish to take this opportunity to thank you for purchasing one of our condominiums. We will make every effort to assure your satisfaction.

74 Kent Street L.L.C.                    By. _____

We hereby acknowledge that we have read this Limited Warranty and agree to the terms as specified therein.

_____           _____
BUYER                                    BUYER

Note:
1. With respect to Common Areas, the Owner is Brookline Village Lofts Condominium.
2. With respect to the Condominium Unit, the Owner is the Condominium Buyer.

24

**VIA CERTIFIED MAIL RRR
7004 2510 0007 3018 2626**

August 8, 2005


74 Kent Street LLC
c/o RCG LLC
17 Ivaloo Street, Suite 100
Somerville, MA  02143
**Attn:  Alex M. Steinbergh, Trustee**

Re:    Timothy McNamara
       74 Kent Street, Unit C14

Dear Mr. Steinbergh:

Please be advised that I represent Timothy McNamara.  This is a formal demand sent to you pursuant to the provisions of Mass. G.L. c.93A §9, and is a demand for relief in behalf of my client for unfair and/or deceptive practices employed by 74 Kent Street, LLC.  Generally, all unfair and deceptive practices in the conduct of any business are declared unlawful by c.93A.  The facts in this matter are as follows:

1.    74 Kent Street, LLC was the builder and developer of the condominium at 74 Kent Street, which included Mr. McNamara's Unit C14.

2.    On or about February 1, 2002, Stephen Walberg entered into a purchase and sale agreement with Mr. McNamara to sell him Unit C14.

3.    The agreement included an assignment by Walberg to McNamara of all warranties, which included the Brookline Village Lofts Limited Warranty for 74 Kent Street, LLC covering electrical and plumbing system for a period of one year from the date of closing.

4.    Mr. McNamara took title on or about April 1, 2002 to Unit C14.  On October 9, 2002, the sprinkler device in Unit C14 malfunctioned flooding the entire premises with a large volume of water, destroying the structure and its interior causing significant mold damage.

5.    Notice of this loss was give to 74 Kent Street, LLC by certified mail on November 22, 2002.  That was followed up with a further letter on May 7, 2003.

74 Kent Street, LLC/Timothy McNamara
August 8, 2005/Page Two

6.    Mr. McNamara has expended approximately $204,000 to have Unit C14 restored and rebuilt and in addition suffered personal property losses totaling approximately $132,000.

7.    The malfunction of the sprinkler device constitutes a breach of warranty which, in trun, constitutes a violation of c.93A §9.

In accordance with the provisions of c.93A §9 I am making demand for relief and settlement within thirty (30) days from the date of receipt hereof.  Your failure to comply with this demand will result in commencing a court action to obtain relief pursuant to c.93A §9 as well as for other relevant causes of action.  According to the express provisions of c.93A §9, my client is entitled to commence a civil action to recover damages to which he may be entitled by reason of the acts set forth above after the expiration of the aforesaid thirty (30) day period, unless a written tender of settlement is made by your company during such thirty (30) day period and such tender is of a reasonable amount under the circumstances.  I am further advising you that in the event that it becomes necessary to take legal action, we will seek as a consequence of the statutory violations set forth above, treble damages, interest, attorney's fees, and costs and expenses.

Very truly yours,


Roger S. Davis

RSD:cat

"B"

MCNAMARA:74KS:AMS