UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 OCT 18 P 12: 58

U.S. DISTRICT COURT
DISTRICT OF MASS.

CLARENDON NATIONAL INSURANCE
COMPANY,

          Plaintiff

v.

TIMOTHY MCNAMARA, 74 KENT
STREET, LLC, and
ALEX M. STEINBERGH,

          Defendants

Civil Action No. 05 11056 JLT

## PLAINTIFF CLARENDON NATIONAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

### RELEVANT FACTS AND PROCEDURAL BACKGROUND

This action arises out of a water loss suffered by the defendant, Timothy McNamara, at a condominium unit (the "Unit") he owned at the Brookline Village Lofts condominium (the "Condominium"). McNamara's answer at ¶ 8. On October 9, 2002, a sprinkler in the Unit malfunctioned, causing property damage to the Unit and its contents, as well as several other units in the Condominium. *See id.* at ¶¶ 12-13. McNamara was aware of the damage to the Unit and his personal property in October 2002. *See id.* at ¶ 35.

Plaintiff Clarendon National Insurance Company ("Clarendon") had previously issued property insurance policy No. BHP 0189700 (the "Policy") to the then-current Trustees of the Condominium, Alex Steinbergh and R. Stanley Bowden, and several entities that had developed/and or marketed the Condominium, Resource Capital Group ("RCG") and 74 Kent Street, LLC ("74 Kent"). *See id.* at ¶¶ 6-7, 10; Policy, Exhibit A. A claim was submitted by 74 Kent and RCG for reimbursement under the Policy for the October 2002 loss. During the course

of the Clarendon's investigation, McNamara asserted claims that he, as a unit owner, had an

insurable interest under the Policy, and demanded that Clarendon compensate him directly. *See*

McNamara's Answer at ¶ 15. On July 17, 2003, McNamara filed an action against Clarendon

styled *McNamara v. Clarendon National Insurance Company*, Norfolk Superior Court No. 03-

0312 (the "Action") seeking injunctive relief to compel Clarendon to make payment to him under

the Policy for structural and mold damage to the Unit as a result of the October 2002 Incident.

McNamara also sought recovery for alleged breaches of the Policy and violations of Chapter

176D and 93A. *See id.* at ¶ 16.

In early 2004, McNamara and Clarendon settled the Action for $50,000. *See id.* at ¶ 17.

On January 28, 2004, McNamara executed a release (the "Release") of any claims that he had or

could have asserted against Clarendon in the Action. *See id.* at ¶ 18.

McNamara has recently threatened a second suit against Clarendon seeking an additional

$209,294 under the Policy for unreimbursed damages to the Unit and for damages to his personal

property as a result of the October 2002 Incident. *See id.;* Demand letter, Exhibit B. Shortly

after receipt of McNamara's demand letter, Clarendon filed the instant action seeking a

declaratory judgment that neither McNamara nor any of the named insureds are entitled to

receive any further amounts under the Policy.[1] Among the reasons cited by Clarendon in support

of its request are that McNamara released any further claims under the Policy, any further claims

under the Policy are barred by the doctrine of accord and satisfaction and the prohibition against

claim splitting, and any further claims are barred by the contractual limitations period for

bringing suit under the Policy. *See* Amended Complaint at Counts I-III.

---

[1]   The named insureds, Resource Capital Group and 74 Kent, and Alex Steinbergh, have already stipulated to
a declaratory judgment that they are not entitled to any further coverage under the Policy.

As set forth below, this case should be decided as a matter of law based upon

McNamara's admission in his answer that he was aware of the damage to his Unit and its source

in October 2002. This admission makes it clear that any further claims for coverage by

McNamara are barred by the two-year contractual limitation for bringing suit against Clarendon

under the Policy.

## ARGUMENT

### THE COURT SHOULD GRANT CLARENDON'S MOTION FOR JUDGMENT ON THE PLEADINGS BECAUSE, AS A MATTER OF LAW, THE CONTRACTUAL LIMITATIONS PERIOD IN THE POLICY BARS ANY FURTHER CLAIMS BY McNAMARA.

The Court should grant Clarendon's motion for judgment on the pleadings because, as a

matter of law, the two-year contractual limitations period set forth in the Policy bars any further

claims by McNamara. "It is generally accepted that contracting parties may provide a limitations

period within which actions on the contract must be commenced, so long as the time period is

not unreasonably abbreviated." *Reynolds Industries, Inc. v. Mobil Oil Corporation*, 618 F. Supp.

419, 421 (D. Mass. 1985) (citing *Order of United Commercial Travelers of America v. Wolfe*,

331 U.S. 586, 608 (1947) (further citation omitted). Courts in Massachusetts have held that a

one-year contractual limitations period, "although brief, is valid and enforceable." *Hays v. Mobil*

*Oil Corp.*, 930 F.2d 96, 100 (1st Cir. 1991); *Reynolds*, 619 F. Supp. at 421; *Eliot Nat. Bank v.*

*Beal*, 141 Mass. 566, 568 (1886) (holding that one-year contractual limitations period for filing

suit on a bond was valid) (further citations omitted).

In this case, the Other Conditions section of the Policy contains a contractual limitations

provision that states, "Suit Against Us – No one may bring a legal action against "us" under this

coverage unless: . . . the suit has been brought within two years after "you" first have knowledge

of the loss. . . ." Exhibit A, form COP-100 at page 20 of 21. McNamara has admitted in his

answer to Clarendon's complaint that he was aware of the damage to the Unit and its contents in

October 2002 and, therefore, the contractual limitations period for filing suit against Clarendon

under the Policy expired in October 2004.[2] *See* McNamara's Answer at ¶35. Accordingly, any

further claims by McNamara are barred, and Clarendon is entitled to judgment in its favor.

## CONCLUSION

For the reasons discussed above, Clarendon requests that the Court grant its motion for

judgment on the pleadings.

> Respectfully submitted,
> CLARENDON NATIONAL INSURANCE
> COMPANY
> By its Attorneys,

Edward J. Barshak, BBO No. 032040
John G. O'Neill, BBO No. 630272
SUGARMAN, ROGERS, BARSHAK & COHEN, P.C.
101 Merrimac Street
Boston, MA 02114-4737
(617) 227-3030

Dated: October 17, 2005

---

[2]    The named insureds have also admitted that they were aware of the damage to the Unit and its contents in
October 2002. *See* Answer of Resource Capital Group, et al. at ¶ 35.

CERTIFICATE OF SERVICE

I, John G. O'Neill, hereby certify that the above date, I served the foregoing document upon the other parties to this litigation by mailing a copy of same to:

Stephen S. Clark, Esquire
General Counsel
RCG LLC
17 Ivaloo Street
Somerville, MA 02143

Roger S. Davis, Esquire
Davis & Rubin
One Bowdoin Square, Suite 801
Boston, MA 02114

_____
John G. O'Neill

368858.1

POLICY NUMBER: **BHP 189700**

**COMMERCIAL INLAND MARINE**
CM DS 02 09 00

# COMMERCIAL INLAND MARINE DECLARATIONS

CLARENDON NATIONAL INSURANCE COMPANY
1177 Avenue of the Americas
New York, NY 10036

BREED'S HILL INSURANCE AGENCY, INC.
Four 13th Street
The Navy Yard
Charlestown, MA 02129

*True d Certified*
*Policy 8|1|03*
*Breds Hill IRS*

**NAMED INSURED**      RESOURCE CAPITAL GROUP, ETAL

**MAILING ADDRESS**    843 MASSACHUSETTS AVENUE

CAMBRIDGE, MA 02139

**POLICY PERIOD:**   From   02/10/2002   to   02/10/2003   at
12:01 A.M. Standard Time at your mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**Business Description: HABITATIONAL**

**Forms applicable to the Commercial Inland Marine Coverage Part   ATTACHED**

Commercial Output Program                            COP-100 Ed 2.0
Continued on page 2

Premium: $ 93,801.                              Payable at Inception: $

**COUNTERSIGNED**  03/14/2002 (amc)         **BY** _____  8|1|2003
                   (Date)                        (Authorized Representative)

| Forms applicable to the Commercial Inland Marine Coverage Part, Cont'd | |
|---|---|
| Common Policy Conditions | IL OO 17 11 98 |
| Description of Covered Locations and Limits to Covered Property | DCLL01 |
| Changes to Commercial Output Program – Property Coverage Part, COP-100 Ed2.0 | CCOP01 |
| Business Income (And Extra Expense) Coverage Form | CP 00 30 10 00 |
| Ordinance or Law Coverage | CP 04 05 10 00 |
| Utility Services – Direct Damage | CP 04 17 06 95 |
| Utility Services – Time Element | CP 15 45 06 95 |
| Earthquake and Volcanic Eruption Endorsement | CP 10 40 08 99 |
| Flood Coverage Endorsement | CP 10 65 10 00 |
| Cancellation Changes | Policy Change Number 1 |
| Earthquake Changes | Policy Change Number 2 |
| Flood Changes | Policy Change Number 3 |
| Money and Securities | Policy Change Number 4 |
| Condominium Changes | Policy Change Number 5 |
| Electronic Data Processing | Policy Change Number 6 |
| Joint Loss | Policy Change Number 7 |
| Massachusetts Tenant Relocation Expense | IL 01 08 11 85 |
| Exclusion of Certain Computer-Related Losses | IL 09 35 07 01 |

**Mortgagee Schedule**

Premises/Building No.        Mortgagee Name and Address

**NONE**

Copyright, Insurance Services Office, Inc., 2000        **CM DS 02 09 00**

## Form DCLL01

**Description of Covered Locations and Limits to Covered Property**
This schedule is a part of the policy declarations.

**Policy Number: BHP 189700**

**Named Insured: RESOURCE CAPITAL GROUP, ETAL**

**Effective Date: 02/10/2002 TO 02/10/2003**

**Description of Covered Locations**

| Premises No. | Building No. | Location, Construction and Occupancy |
|---|---|---|

**SCHEDULE ATTACHED**

**Limits of Insurance (Agreed Amount)**

| Premises/ Building No. | Blanket Building Property Limit | Business Personal Property Limit | Business Income/Extra Expense Limit |
|---|---|---|---|
| ALL | $49,707,350. | INCLUDED | INCLUDED |

**Valuation**

| Premises/ Building No. | Building Property Valuation | Business Personal Property Valuation |
|---|---|---|
| ALL | REPLACEMENT COST | INCLUDED |

**Deductibles**

| Premises/ Building No. | Building Property Ded | Business Personal Property Ded | Business Income/Extra Expense Ded |
|---|---|---|---|
| ALL | $2,500. | INCLUDED | INCLUDED |

## Form DCLL01

### Description of Covered Locations and Limits to Covered Property
This schedule is a part of the policy declarations.

### Limits of Insurance – Law or Ordinance, per Form No. CP 04 05 10 00

All locations covered except:

Coverage B: $250,000 per affected building, up to a maximum aggregate limit of 25% of total insurable value of all covered locations.

Coverage C: $250,000 per affected building, up to a maximum aggregate limit of 25% of total insurable value of all covered locations.

### Limits of Insurance and Deductible – Earthquake and Volcanic Eruption, per Form No. CP 10 45 08 99 and Endorsement 2

All locations covered except property situated in ISO Earthquake zones 1,2 or 3 and the following specific property (specify):

Limit of Insurance: $2,500,000.    Deductible: $25,000.

### Limits of Insurance and Deductible – Flood, per Form No. CP 10 65 10 00 and Endorsement 3

All locations covered except property situated in FEMA flood zones A, B or V and the following specific property (specify):

Limit of Insurance: $2,500,000.    Deductible: $25,000.

RESOURSE CAPITAL GROUP, CONT'D.
<u>LOCATIONS:</u>

19.   2-4 Orchard St.
      Cambridge, MA
20.   8 Orchard St.
      Cambridge, MA
21.   63-65 Inman St.
      Cambridge, MA
22.   19 Pleasant St.
      Cambridge, MA
23.   2,4 & 6 Arlington St.
      Cambridge, MA
24.   250-258 Somerville Ave.
      Somerville, MA
25.   1168-1174 Massachusetts Ave.
      Cambridge, MA
26.   52-54 Kent Street
      Brookline, MA
27.   50 Kent St.
      Brookline, MA
28.   120 Myrtle St.
      Waltham, MA
29.   572-580 Cambridge St.
      Cambridge, MA
30.   1-8 Adler Terrace/.
      31-51 Adler St.
      Waltham, MA
31.   125 Trapelo Road
      Belmont, MA
32.   441-449 Common St.
      Belmont, MA
33.   3 Clinton St.
      Cambridge, MA
34.   20-24 Royce Road
      Brighton, MA
35.   843 Massachusetts Ave.
      Cambridge, MA
36.   442,448 Windsor St.
      Cambridge, MA
37.   373-391 Cambridge St.
      Allston, MA

**NAMED INSURED**:   RESOURCE CAPITAL GROUP, ETAL
**POLICY #:**   BHP 189700
**POLICY PERIOD:**   02/10/2002 TO 02/10/2003

## SCHEDULE OF LOCATIONS

LOCATIONS:

1.   100A–102 Hampshire St.
   Cambridge, MA
2.   355-363 Prospect St.
   Cambridge, MA
3.   6-8 Clary St.
   Cambridge, MA
4.   60 Ellery St.
   Cambridge, MA
5.   115-117 Pleasant St.
   Cambridge, MA
6.   193-195 Brookline St.
   Cambridge, MA
7.   100-116 Willow St.
   Cambridge, MA
8.   1218-1228 Cambridge St.
   Cambridge, MA
9.   105-107 Gore St.
   Cambridge, MA
10.   266-270 Windsor St.
   Cambridge, MA
11.   16 Chauncy St.
   Cambridge, MA
12.   1-6 Mullins Ct.
   Cambridge, MA
13.   7-9 Mullins Ct.
   Cambridge, MA
14.   14-20 Allen St.
   Cambridge, MA
15.   15 Bigelow St.
   Cambridge, MA
16.   135 Inman St.
   Cambridge, MA
17.   197 Otis & 9-14 Max Ave.
   Cambridge, MA
18.   1245-1273 Cambridge St. & 353 P
   Cambridge, MA

RESOURCE CAPITAL GROUP, CONT'D
LOCATIONS:

38.  293 –295 River St.
     Cambridge, MA
39.  1100-1108 Cambridge St.
     Cambridge, MA
40.  74 Kent Street
     Brookline, MA
41.  376-390 Moody St.
     Waltham, MA
42.  21-23-25 Robbins St.
     Waltham, MA
43.  1325 Commonwealth &
     15 Parkvale
     Allston, MA
44.  48-50 Highland Ave.
     Somerville, MA
45.  144 Moody St.
     Waltham, MA
46.  20 Chestnut St.
     Cambridge, MA
47.  863 Massachusetts Ave. #45
     Cambridge, MA
48.  57 Colbourne #1
     Brighton, MA
49.  137 Chiswick St. #1B/3B
     Brighton, MA
50.  518 Putnam Ave., Unit #3
     Cambridge, MA
51.  1325 Commonwealth & 15 Parkvale
     Allston, MA
52.  247-249 Chestnut Hill Unit 3,4&5
     Brighton, MA
53.  63 Sutherland Rd.
     Brighton, MA
54.  247-249 Chestnut Hill (Unit 5)
     Brighton, MA
55.  28 Quint Ave. #10
     Brighton, MA
56.  32 Sidlaw Ave. Unit 18
     Brighton, MA
57.  97 Chester #B5
     Brighton, MA

RESOURCE CAPITAL GROUP, CONT'D.

LOCATIONS:

58. 1625#14 & 1673#5, Commonwealth Ave.
    Brighton, MA
59. 1645#19 Commonwealth Ave.
    Brighton, MA
60. 1629 #9 Commonwealth Ave.
    Brighton, MA
61. 1641 #21 Commonwealth Ave.
    Brighton, MA
62. 1625#17 & 1669#15 Commonwealth Ave.
    Brighton, MA
63. 1629 Commonwealth Ave., 2,15
    Brighton, MA
64. 1633 Commonwealth Ave., 4,5,10,15,17
    Brighton, MA
65. 1641 Commonwealth Ave., 2,8,9,11,14,17,18,20
    Brighton, MA
66. 247-249 Chestnut Hill 23,26,33,43,51
    Brighton, MA
67. 24-32 Sidlaw Ave., 24-6, 15,28-12,32,2,3
    Brighton, MA
68. 90 Brainard Rd., Unit 17
    Brighton, MA
69. 88 Gordon St., (Unit 101)
    Brighton, MA
70. 38 Ridgemont #3
    Brighton, MA
71. 38 Ransom Rd., #3
    Belmont, MA
72. 1576 Commonwealth Ave., #4
    Brighton, MA
73. 1404 Commonwealth Ave., (Unit 3)
    Cambridge, MA
74. 19 Colliston #12A
    Brighton, MA
75. 5 Colliston #B1
    Brighton, MA
76. 324 Chestnut Hill Ave., #15
    Brighton, MA
77. 21 Chauncy St., #3b,4,24,26,33,36,37,43,44
    Cambridge, MA
78. 145 Newton Street
    Waltham, MA

79.    365 Fanuel St., (Unit 3&4)
       Brighton, MA
80.    45 Gordon Street, 1,3,4
       Brighton, MA

## SCHEDULE OF NAMED INSURED(S):

Resource Capital Group, etal
100-102 Hampshire Street Condominium Trust
100-116 Willow Condominium trust
105-107 Gore Street Condominium Trust
115 Pleasant Associates AKA-115-117 Pleasant Condominium Trust
1218 Cambridge Associates
1218-1228 Cambridge Street Condominium
135 Inman Street Trust
14-20 Allen Street Condominium Trust
14 Allen Street Realty Trust
15 Bigelow Condominium Trust
16 Chauncy Associates
1800 Mass Associates
193 Brookline Associates II
193-195 Brookline Street Condominium Trust
197 Otis Street/9-14 Max Avenue Condominium Trust
2-8 Orchard Realty Trust
266-270 Windsor Street Condominium Trust
60 Ellery Associates
63 Inman Street Realty Trust
Alex M. Steinbergh
Alex Steinbergh/Stan Bowden
Anita Steinberg
Betty Spurgeon
David Steinbergh
Donald Comstock
Elizabeth McKim
Elizabeth Reich
Finn Hals
George Thatcher
Hannah Thatcher
Harry Reich
Janet Kelly
Joyce Hals
Kristen Bowden
Lincoln Sturgeon
Martin Duffy

Melissa Bowden
Milton Newman
Mullins Court Condominium Trust
Pleasant Realty Associates
Prospect Realty Associates
Rebecca Bedell
Richard Gray
Richard Sullivan
Ron Windahl
SBH Associates
Sharon Bowden
Shauna Steinbergh
Stan Bowden
Stan Bowden/Alex Steinbergh
T.N. Margulis
Willow Associates II
250-256 Somerville Avenue Realty Trust
Scattered Realty Trust
52-54 Kent Street Trust
Cambridge House, LLC
Porter Square Condominium Trust
63 Sutherland Road B2 Nominee Realty Trust;Alex Steinbergh Trustee
120 Myrtle Street Realty Trust
1245-73 Cambridge Street & 353 Prospect Street Condo Trust
16 Chauncy Street Condominium Trust
1625 #14 & 1673 #5 Comm Ave Realty Trust
1625 #17 & 1669 #15 Comm Ave Realty Trust
1629 #9 Comm Ave Realty Trust
1641 #21 Comm Ave Realty Trust,
1645 #19 Comm Ave Realty Trust
572-580 Cambridge Realty Trust
Quint Avenue Realty Trust
Three Corner Limited Partnership
1576 #4 Comm Avenue Realty Trust
90 Brainard Realty Trust
580 Cambridge Realty Trust, Alex M. Steinbergh Trustee
Scatter-2 Realty Trust, Alex M. Steinbergh Trustee
88 Gordon Realty Trust, Alex M. Steinbergh Trustee
20-24 Royce Road Realty Trust, Alex M. Steinbergh Trustee
3 Clinton Street Condo Trust
Harvard Street Management, Inc.
Comm Ave Realty Trust
Trapelo Common Realty Trust
James A. Mangenello and Genevieve C. Bonbara Trustees
Under A Declaration of Trust of Belmont Manor Realty Trust

Ransom 39 #9 Realty Trust
31-51 Alder Trust
Cambridge Willow Realty Trust
Prospect Realty Trust
RCG Realty Trust
RCG 373-391 Cambridge Realty Trust
324 Chestnut Hill Unit 15 Trust
RCG 1325-4 Comm Ave Trust
110 Cypress Street Realty Trust
21-31 Robbin Street Realty Trust
376-390 Moody Street Realty Trust
74 Kent Street, LLC
RCG 74 Kent Street Realty Trust-Stuart Rothman, Trustee
Lewis Roberts
Jesse Nien Shi Shu, Trustee
First Cambridge Realty Corp.
15 Bigelow Street Realty Trust
135 Inman Street Condominium
1325 Commonwealth Avenue Condominium

## SCHUEDULE OF MORTGAGEE(S):

East Cambridge Savings Bank
292 Cambridge Street
Cambridge, MA 02141-1263
as respects to loc #12, 13 & 36

Revised 03-06-2002
Date of Issue                               Signature of Authorized Representative

## ENDORSEMENT

**Not Valid Unless Signed By A Duly Authorized Representative Of The Company**

Company:
**CLARENDON NATIONAL INSURANCE COMPANY**
Agent:
**BREED'S HILL INSURANCE AGENCY, INC.**

| Place of issue | | | Date of issue | |
|---|---|---|---|---|
| **Boston, MA** | | | **7/12/2002** | |

| Endorsement effective (standard time) | Month | Day | Year | Amending policy no. |
|---|---|---|---|---|
| **Hour 12:01 A. M.** | **6** | **6** | **2002** | **BHP 189700** |

Issued to:
**RESOURCE CAPITAL GROUP, etal**

The above information is not required when this endorsement is issued with the policy.

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten below.

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS HEREBY UNDERSTOOD AND AGREED THIS POLICY IS AMENDED TO READ AS FOLLOWS:

**AMEND:**   Loc.: #40:   72,74,76 Kent St., & 73,75,77 Linden St., Brookline, MA 02146
(From 74 Kent St., Brookline, MA 02146)

**ADD:**   Mortgagee:   Fannie Mae ISAOA ATIMA
c/o Berkshire Mortgage Finance, One Beacon Street
Boston, MA 02108
as respects to 20-24 Royce Rd., Brighton, MA

East Boston Savings Bank ISAOA ATIMA
c/o MGA Hazard Tracking Inc., P.O. Box 8455
Reston, VA 20195
as respects to 110 Perkins St., Somerville, MA &
67 Marlborough St., Chelsea, MA

TOTAL INSURED VALUES REMAIN $54,661,640.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

| Additional premium | Return premium |
|---|---|
| $N/A | $ |

Signature of authorized representative

Page 1

# ENDORSEMENT

**Not Valid Unless Signed By A Duly Authorized Representative Of The Company**

Company:
**CLARENDON NATIONAL INSURANCE COMPANY**
Agent:
**BREED'S HILL INSURANCE AGENCY, INC.**

| Place of issue | Date of issue |
|---|---|
| **Boston, MA** | **5/2/2002** |

| Endorsement effective (standard time) | Month | Day | Year | Amending policy no. |
|---|---|---|---|---|
| **Hour 12:01 A. M.** | **2** | **10** | **2002** | **BHP 189700** |

Issued to:
**RESOURCE CAPITAL GROUP**

The above information is not required when this endorsement is issued with the policy.

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten below.

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $1,978.00, IT IS HEREBY UNDERSTOOD AND AGREED THAT THIS POLICY IS AMENDED TO INCLUDE THE FOLLOWING:

| | |
|---|---|
| NAMED INSURED: | 145 Newton Street Realty Trust |
| LOCATION: | 145 Newton Street, Waltham,  MA |
| LIMIT: | Building: $1,040,000. |
| | Rents: $90,000. |
| | **TIV: $1,130,000.** |

TOTAL INSURED VALUES ARE INCREASED FROM $50,821,760. TO $51,951,760.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

| Additional premium | Return premium | |
|---|---|---|
| $N/A | $ | |

Signature of authorized representative

# ENDORSEMENT
**Not Valid Unless Signed By A Duly Authorized Representative Of The Company**

Company:
**CLARENDON NATIONAL INSURANCE COMPANY**
Agent:
**BREED'S HILL INSURANCE AGENCY, INC.**

| Place of issue | Date of issue |
|---|---|
| **Boston, MA** | **5/2/2002** |

| Endorsement effective (standard time) | Month | Day | Year | Amending policy no. |
|---|---|---|---|---|
| **Hour 12:01 A. M.** | **2** | **19** | **2002** | **BHP 189700** |

Issued to:
**RESOURCE CAPITAL GROUP**

The above information is not required when this endorsement is issued with the policy.

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten below.

IN CONSIDERATION OF A RETURN PREMIUM OF $32.00, IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS DELETED FROM THIS POLICY:

863 Massachusetts Ave., #45
Cambridge, MA 02139

Limit: -$19,000.

TOTAL INSURED VALUES ARE DECREASED FROM $51,951,760. TO $51,932,760.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

| Additional premium | Return premium |
|---|---|
| $ | $32.00 |

Signature of authorized representative

# ENDORSEMENT

**Not Valid Unless Signed By A Duly Authorized Representative Of The Company**

Company:

**CLARENDON NATIONAL INSURANCE COMPANY**

Agent:

**BREED'S HILL INSURANCE AGENCY, INC.**

| Place of issue | Date of issue |
|---|---|
| **Boston, MA** | **5/2/2002** |

| Endorsement effective (standard time) | Month | Day | Year | Amending policy no. |
|---|---|---|---|---|
| **Hour 12:01 A. M.** | **3** | **6** | **2002** | **BHP 189700** |

Issued to:
**RESOURCE CAPITAL GROUP**

The above information is not required when this endorsement is issued with the policy.

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten below.

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS HEREBY UNDERSTOOD AND AGREED THAT THE SCHEDULE OF LOCATIONS IS AMENDED TO READ AS PER THE ATTACHED REVISED SCHEDULE (TOTAL 80 LOCATIONS).

IT IS FURTHER AGREED THAT THE TOTAL INSURED VALUES ARE INCREASED FROM $49,707,350. TO $50,821,760.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

| Additional premium | Return premium | |
|---|---|---|
| $N/A | $ | |

Signature of authorized representative

# ENDORSEMENT

**Not Valid Unless Signed By A Duly Authorized Representative Of The Company**

Company:
**CLARENDON NATIONAL INSURANCE COMPANY**
Agent:
**BREED'S HILL INSURANCE AGENCY, INC.**

| Place of issue | Date of issue |
|---|---|
| **Boston, MA** | **7/11/2002** |

| Endorsement effective (standard time) | Month | Day | Year | Amending policy no. |
|---|---|---|---|---|
| **Hour 12:01 A. M.** | **3** | **25** | **2002** | **BHP 189700** |

Issued to:
**RESOURCE CAPITAL GROUP, etal**

The above information is not required when this endorsement is issued with the policy.

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten below.

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS HEREBY UNDERSTOOD AND AGREED THIS POLICY IS AMENDED TO INCLUDE THE FOLLOWING:

**ADD:**     Mortgagee:          Boston Federal Savings Bank
                                            17 New England Executive Park
                                            Burlington, MA 01803
                                            as respects to 48-50 Highland Ave., Somerville, MA

TOTAL INSURED VALUES REMAIN $54,573,440.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

| Additional premium | Return premium |
|---|---|
| $N/A | $ |

Signature of authorized representative

## ENDORSEMENT
Not Valid Unless Signed By A Duly Authorized Representative Of The Company

---

Company:
**CLARENDON NATIONAL INSURANCE COMPANY**
Agent:
**BREED'S HILL INSURANCE AGENCY, INC.**

---

| Place of issue | | | | Date of issue | |
|---|---|---|---|---|---|
| **Boston, MA** | | | | **7/11/2002** | |

| Endorsement effective (standard time) | Month | Day | Year | Amending policy no. |
|---|---|---|---|---|
| **Hour 12:01 A. M.** | **3** | **25** | **2002** | **BHP 189700** |

Issued to:
**RESOURCE CAPITAL GROUP, etal**

---

The above information is not required when this endorsement is issued with the policy.

---

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten below.

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $136.00, IT IS HEREBY UNDERSTOOD AND AGREED THIS POLICY IS AMENDED TO INCLUDE THE FOLLOWING:

**ADD:**    Rents Coverage:    Loc. # 79: 365 Fanuel St., Units 3 & 4, Brighton, MA
Rental Limit: $32,400.

Loc. #80: 45 Gordon St., Units 1,3,4, Brighton, MA
Rental Limit: $55,800.

TOTAL INSURED VALUES ARE INCREASED FROM $54,573,440. $54,661,640.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

---

| Additional premium | Return premium |
|---|---|
| $136.00 | $ |

Signature of authorized representative

## ENDORSEMENT

**Not Valid Unless Signed By A Duly Authorized Representative Of The Company**

Company:
**CLARENDON NATIONAL INSURANCE COMPANY**
Agent:
**BREED'S HILL INSURANCE AGENCY, INC.**

| Place of issue | | Date of issue | |
|---|---|---|---|
| **Boston, MA** | | **5/2/2002** | |

| Endorsement effective (standard time) | Month | Day | Year | Amending policy no. |
|---|---|---|---|---|
| **Hour 12:01 A. M.** | **3** | **29** | **2002** | **BHP 189700** |

Issued to:
**RESOURCE CAPITAL GROUP, etal**

The above information is not required when this endorsement is issued with the policy.

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten below.

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS HEREBY UNDERSTOOD AND AGREED THAT THIS POLICY IS AMENDED TO INCLUDE THE FOLLOWING:

MORTGAGEE:      Fannie Mae
                   c/o Allfirst Mortgage Corp., ISAOA, ATIMA
                   25 S. Charles Street, 17th Floor
                   Mail Code: 101-617
                   Baltimore, MD 21201
                   as respects to Loc. # 2, 3, 4, 5, 7 & 22.

IT IS FURTHER AGREED THAT CAMBRIDGE APARTMENTS AND 19 PLEASANT STREET APARTMENTS ARE ADDED AS NAMED INSUREDS.

TOTAL INSURED VALUES REMAIN $52,960,140.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

| Additional premium | Return premium | |
|---|---|---|
| $N/A | $ | |

Signature of authorized representative

## ENDORSEMENT
**Not Valid Unless Signed By A Duly Authorized Representative Of The Company**

Company:
**CLARENDON NATIONAL INSURANCE COMPANY**
Agent:
**BREED'S HILL INSURANCE AGENCY, INC.**

| Place of issue | Date of issue |
|---|---|
| **Boston, MA** | **5/2/2002** |

| Endorsement effective (standard time) | Month | Day | Year | Amending policy no. |
|---|---|---|---|---|
| **Hour 12:01 A. M.** | **4** | **8** | **2002** | **BHP 189700** |

Issued to:
**RESOURCE CAPITAL GROUP, etal**

The above information is not required when this endorsement is issued with the policy.

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten below.

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $880.00, IT IS HEREBY UNDERSTOOD AND AGREED THAT THIS POLICY IS AMENDED TO INCLUDE THE FOLLOWING:

NAMED INSURED:           67 Marlborough LLC
LOCATION:                 67 Marlborough Street
                               Chelsea, MA 02150
                               Building: $363,000.
                               Rents: $54,000.
                               **TIV: $417,000.**

TOTAL INSURED VALUES ARE INCREASED FROM $52,960,140. TO $53,377,140.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

| Additional premium | Return premium | |
|---|---|---|
| $880.00 | $ | |

                                                  Signature of authorized representative

# ENDORSEMENT

**Not Valid Unless Signed By A Duly Authorized Representative Of The Company**

Company:
## CLARENDON NATIONAL INSURANCE COMPANY
Agent:
## BREED'S HILL INSURANCE AGENCY, INC.

| Place of issue | | | Date of issue | |
| --- | --- | --- | --- | --- |
| **Boston, MA** | | | **5/2/2002** | |

| Endorsement effective (standard time) | Month | Day | Year | Amending policy no. |
| --- | --- | --- | --- | --- |
| **Hour 12:01 A. M.** | **3** | **29** | **2002** | **BHP 189700** |

Issued to:
**RESOURCE CAPITAL GROUP, etal**

The above information is not required when this endorsement is issued with the policy.

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten below.

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $2,237.00, IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS ADDED TO THIS POLICY:

NAMED INSURED:    110 Perkins LLC
LOCATION:    110 Perkins Street
        Somerville, MA 02143
        Limit: $1,027,380.

IT IS FURTHER AGREED THAT RCG 48-50 HIGHLAND AVENUE TRUST IS ADDED TO THIS POLICY AS RESPECTS TO LOC. #44: 48-50 HIGHLAND AVE., SOMERVILLE, MA

TOTAL INSURED VALUES ARE INCREASED FROM $51,932,760. TO $52,960,140.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

| Additional premium | Return premium |
| --- | --- |
| $2,237.00 | $ |

Signature of authorized representative

# ENDORSEMENT

**Not Valid Unless Signed By A Duly Authorized Representative Of The Company**

Company:
## CLARENDON NATIONAL INSURANCE COMPANY
Agent:
## BREED'S HILL INSURANCE AGENCY, INC.

| Place of issue | Date of issue |
|---|---|
| **Boston, MA** | **5/3/2002** |

| Endorsement effective (standard time) | Month | Day. | Year | Amending policy no. |
|---|---|---|---|---|
| **Hour 12:01 A. M.** | **4** | **16** | **2002** | **BHP 189700** |

Issued to:
**RESOURCE CAPITAL GROUP, etal**

The above information is not required when this endorsement is issued with the policy.

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten below.

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $52.00, IT IS HEREBY UNDERSTOOD AND AGREED THAT THE BUILDING LIMIT ON LOCATION #44, 48-51 HIGHLAND AVE., SOMERVILLE, MA. IS INCREASED FROM $650,000 TO 675,000.

IT IS FURTHER AGREED THAT THE FOLLOWING MORTGAGEE IS MADE PART OF THIS POLICY:
BOSTON FEDERAL SAVINGS BANK, ISAOA/ATIMA
17 NEW ENGLAND EXECUTIVE PARK
BURLINGTON, MA 01803
AS RESPECTS TO LOC. #44, 48-51 HIGHLAND AVE., SOMERVILLE, MA

TOTAL INSURED VALUES ARE INCREASED FROM $53,377,140. TO $53,402,140.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

| Additional premium | Return premium |
|---|---|
| $52.00 | $ |

Signature of authorized representative

# ENDORSEMENT
**Not Valid Unless Signed By A Duly Authorized Representative Of The Company**

Company:
**CLARENDON NATIONAL INSURANCE COMPANY**
Agent:
**BREED'S HILL INSURANCE AGENCY, INC.**

| Place of issue | | | Date of issue | |
|---|---|---|---|---|
| **Boston, MA** | | | **5/3/2002** | |

| Endorsement effective (standard time) | Month | Day | Year | Amending policy no. |
|---|---|---|---|---|
| **Hour 12:01 A. M.** | **4** | **23** | **2002** | **BHP 189700** |

Issued to:
**RESOURCE CAPITAL GROUP, etal**

The above information is not required when this endorsement is issued with the policy.

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten below.

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS HEREBY UNDERSTOOD
AND AGREED THIS POLICY IS AMENDED TO INCLUDE THE FOLLOWING:

NAMED INSURED:    L & R Realty Trust, Gary F. Sneirson Trustee
                      as respects to loc. #78, 145 Newton St., Waltham, MA

MORTGAGEE:      Brookline Savings Bank
                      P.O. Box 470469
                      Brookline, MA 02447-0469
                      as respects to loc. #25: 1168-1174 Massachusetts Avenue
                      Cambridge, MA

TOTAL INSURED VALUES REMAIN $53,402,140.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

| Additional premium | Return premium | |
|---|---|---|
| $N/A | $ | |

Signature of authorized representative

## ENDORSEMENT
**Not Valid Unless Signed By A Duly Authorized Representative Of The Company**

Company:
**CLARENDON NATIONAL INSURANCE COMPANY**
Agent:
**BREED'S HILL INSURANCE AGENCY, INC.**

| Place of issue | Date of issue |
|---|---|
| **Boston, MA** | **5/3/2002** |

| Endorsement effective (standard time) | Month | Day | Year | Amending policy no. |
|---|---|---|---|---|
| **Hour 12:01 A. M.** | **4** | **23** | **2002** | **BHP 189700** |

Issued to:
**RESOURCE CAPITAL GROUP, etal**

The above information is not required when this endorsement is issued with the policy.

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten below.

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS HEREBY UNDERSTOOD AND AGREED THAT LOCATION #23: 2, 4, 6 ARLINGTON STREET, CAMBRIDGE, MA IS AMENDED TO READ AS FOLLOWS:

1800 Massachusetts Avenue & 2, 4, 6 Arlington Street
Cambridge, MA 02139

IT IS FURTHER AGREED THAT THE FOLLOWING MORTGAGEE IS MADE PART OF THIS POLICY:

THE CANTON INSTITUTION FOR SAVINGS
THE BANK OF CANTON
557 WASHINGTON STREET
CANTON, MA 02021
AS RESPECTS TO LOC. # 11 & 23.

TOTAL INSURED VALUES REMAIN $53,402,140.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

| Additional premium | Return premium |
|---|---|
| $N/A | $ |

Signature of authorized representative

## ENDORSEMENT

**Not Valid Unless Signed By A Duly Authorized Representative Of The Company**

Company:
**CLARENDON NATIONAL INSURANCE COMPANY**
Agent:
**BREED'S HILL INSURANCE AGENCY, INC.**

| Place of issue | | | | Date of issue | |
|---|---|---|---|---|---|
| **Boston, MA** | | | | **5/21/2002** | |

| Endorsement effective (standard time) | | Month | Day | Year | Amending policy no. |
|---|---|---|---|---|---|
| **Hour 12:01 A. M.** | | **5** | **6** | **2002** | **BHP 189700** |

Issued to:
**RESOURCE CAPITAL GROUP, etal**

The above information is not required when this endorsement is issued with the policy.

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten below.

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS HEREBY UNDERSTOOD AND AGREED THAT THIS POLICY IS AMENDED TO READ AS FOLLOWS:

INCREASE LOSS OF RENTS LIMIT ON LOC. #26: 52-54 KENT ST., BROOKLINE, MA
TO READ $240,000. (IN LIEU OF $230,000.)

IT IS FURTHER AGREED THAT THE FOLLOWING LOSS PAYYEE / MORTGAGEE
IS MADE PART THIS POLICY:

LEHMAN BROTHERS BANK FSB ISAOA
C/O WACHOVIA/FIRST UNION NATIONAL BANK MORTGAGE SERVICING
8739 RESEARCH DRIVE / URP 4
CHARLOTTE, NC 28262-0828
as respects to Loc. #26 & Loc. #27

TOTAL INSURED VALUES ARE INCREASED FROM $53,402,140. TO $53,412,140.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

| Additional premium | Return premium | |
|---|---|---|
| $Waived | $ | |

Signature of authorized representative

Page 1

# ENDORSEMENT

**Not Valid Unless Signed By A Duly Authorized Representative Of The Company**

Company:
**CLARENDON NATIONAL INSURANCE COMPANY**
Agent:
**BREED'S HILL INSURANCE AGENCY, INC.**

| Place of issue | Date of issue |
|---|---|
| **Boston, MA** | **7/12/2002** |

| Endorsement effective (standard time) | Month | Day | Year | Amending policy no. |
|---|---|---|---|---|
| **Hour 12:01 A. M.** | **6** | **12** | **2002** | **BHP 189700** |

Issued to:
**RESOURCE CAPITAL GROUP, etal**

The above information is not required when this endorsement is issued with the policy.

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten below.

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS HEREBY UNDERSTOOD AND AGREED THIS POLICY IS AMENDED TO READ AS FOLLOWS:

**ADD:**    Mortgagee: South Shore Savings Bank ISAOA ATIMA
1530 Main Street
South Weymouth, MA 02190-1332
as respects to 376-390 Moody St., Waltham, MA and
21-23 Robbins Street, Waltham, MA

TOTAL INSURED VALUES REMAIN $54,661,640.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

| Additional premium | Return premium |
|---|---|
| $N/A | $ |

Signature of authorized representative

# ENDORSEMENT
**Not Valid Unless Signed By A Duly Authorized Representative Of The Company**

Company:
## CLARENDON NATIONAL INSURANCE COMPANY
Agent:
## BREED'S HILL INSURANCE AGENCY, INC.

| Place of issue | Date of issue |
|---|---|
| **Boston, MA** | **7/12/2002** |

| Endorsement effective (standard time) | Month | Day | Year | Amending policy no. |
|---|---|---|---|---|
| **Hour 12:01 A. M.** | **6** | **13** | **2002** | **BHP 189700** |

Issued to:
**RESOURCE CAPITAL GROUP, etal**

The above information is not required when this endorsement is issued with the policy.

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten below.

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS HEREBY UNDERSTOOD AND AGREED THIS POLICY IS AMENDED TO READ AS FOLLOWS:

**ADD:**       Named Insured:       144 Moody Street Realty Trust
                                                     as respects to 144 Moody St., Waltham, MA

TOTAL INSURED VALUES REMAIN $54,661,640.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

| Additional premium | Return premium | |
|---|---|---|
| $N/A | $ | |

Signature of authorized representative

## ENDORSEMENT
**Not Valid Unless Signed By A Duly Authorized Representative Of The Company**

---

Company:
## CLARENDON NATIONAL INSURANCE COMPANY
Agent:
## BREED'S HILL INSURANCE AGENCY, INC.

---

| Place of issue | | | Date of issue | |
|---|---|---|---|---|
| **Boston, MA** | | | **7/11/2002** | |

---

| Endorsement effective (standard time) | · Month | Day | Year | Amending policy no. |
|---|---|---|---|---|
| **Hour 12:01 A. M.** | **6** | **28** | **2002** | **BHP 189700** |

---

Issued to:
**RESOURCE CAPITAL GROUP, etal**

---

The above information is not required when this endorsement is issued with the policy.

---

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten below.

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $1,806.00, IT IS HEREBY UNDERSTOOD AND AGREED THIS POLICY IS AMENDED TO INCLUDE THE FOLLOWING:

NAMED INSURED:    The Cheng Family LLC and Cameron Street Apts
LOCATION:         47-51 Cameron Street a/k/a 14 Leverett Street
                  Brookline, MA  02446
                  Limit: $1,161,300.

MORTGAGEE:        Wachovia Bank, National Association, as Master Servicer on behalf
                  of Wells Fargo Bank, as Trustee for the benefit of the Certificate Holders of,
                  Commercial Mortgage Pass-Through Certificates FUNB Series 2001 C2
                  P.O. Box 391690, Solon, OH 44139-1690


TOTAL INSURED VALUES ARE INCREASED FROM $53,412,140. TO $54,573,440.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

---

| Additional premium | Return premium | |
|---|---|---|
| $1,806.00 | $ | |

---

Signature of authorized representative

# ENDORSEMENT
**Not Valid Unless Signed By A Duly Authorized Representative Of The Company**

Company:
**CLARENDON NATIONAL INSURANCE COMPANY**

Agent:
**BREED'S HILL INSURANCE AGENCY, INC.**

| Place of issue | | | Date of issue | |
|---|---|---|---|---|
| **Boston, MA** | | | **7/26/2002** | |

| Endorsement effective (standard time) | Month | Day | Year | Amending policy no. |
|---|---|---|---|---|
| **Hour 12:01 A. M.** | **7** | **3** | **2002** | **BHP 189700** |

Issued to:
**RESOURCE CAPITAL GROUP, etal**

The above information is not required when this endorsement is issued with the policy.

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten below.

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $4,931.00, IT IS HEREBY UNDERSTOOD AND AGREED THIS POLICY IS AMENDED TO INCLUDE THE FOLLOWING:

| | |
|---|---|
| Named Insured: | 361 Broadway Chelsea, LLC |
| Location: | 361-387 Broadway & 15-19 Fourth Street |
| | Chelsea, MA 02150 |
| | Limit: $4,635,000. |
| | |
| Mortgagee: | Wells Fargo Bank Minnesota N.A. (f/k/a Norwest Bank Minnesota |
| | National Association) as Trustee for the Registered Holders of NationsLink |
| | Funding Corporation, Commercial Mortgage Pass-Through Cert., |
| | Series 2001-CK6 |
| | c/o Midland Loan Services Inc. |
| | 210 W. 10th Street, Kansas City, MA 64105 |

TOTAL INSURED VALUES ARE INCREASED FROM $54,661,640. TO $59,296,640.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

| Additional premium | Return premium |
|---|---|
| $4,931.00 | $ |

Signature of authorized representative

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

Form CCOP01

Changes to Commercial Output Program – Property Coverage Part, COP-100 Ed2.0

THESE ARE IMPORTANT CHANGES TO POLICY TERMS AND CONDITIONS --
PLEASE READ CAREFULLY

1.  BUSINESS PERSONAL PROPERTY, page 3, item 6 is deleted and replaced with the following:
    " 'Mobile Equipment', if not covered by other insurance and if used principally on the described
    premises."

2.  PROPERTY NOT COVERED, page 4, item 1 is deleted and replaced with the following: "We do
    not cover airborne or waterborne personal property."

3.  PROPERTY NOT COVERED, page 4, item 2 is deleted and replaced with the following: "We do
    not cover aircraft or watercraft (including their motors, equipment, and accessories) or railroad
    rolling stock."

4.  PROPERTY NOT COVERED, page 4, item 3 is deleted and replaced with the following: "We do
    not cover animals including birds and fish."

5.  PROPERTY NOT COVERED, page 4, item 8, part a. is amended by adding "standing timber,
    lawns, trees, shrubs and plants."

6.  PROPERTY NOT COVERED, page 4, is amended by adding the following:

    "13. We do not cover bridges, roadways, walks, patios, or other paved surfaces or pilings, piers,
    wharves or docks."

    "14. We do not cover foundations of buildings, machinery or boilers if their foundations are below
    (1) the lowest basement floor; or (2) the surface of the ground if there is no basement."

    "15. We do not cover retaining walls that are not part of the covered buildings."

7.  ADDITIONAL COVERAGES, page 5, item 1 DEBRIS REMOVAL is amended by changing the
    additional amount from $5000 to $25,000.

8.  SUPPLEMENTAL COVERAGES, page 6, item 2 BRANDS AND LABELS EXPENSE, the
    second paragraph is deleted in its entirety.

9.  SUPPLEMENTAL COVERAGES, page 6, item 4 FOUNDATIONS OF BUILDINGS, PILINGS
    AND UNDERGROUND PIPES is deleted in its entirety.

10. SUPPLEMENTAL COVERAGES, page 6, item 5 INVENTORY AND APPRAISALS EXPENSE
    is deleted in its entirety.

11. SUPPLEMENTAL COVERAGES, page 7, item 6 NEWLY ACQUIRED BUILDINGS is
    amended as follows: 60 days is substituted for 90 days in the second paragraph; and the limit of
    liability in the fourth paragraph is amended from $500,000 to 25% of Total Insurable Value up to
    a maximum of $250,000.

Page 1 of 2

Form CCOP01

Changes to Commercial Output Program – Property Coverage Part, COP-100 Ed2.0

THESE ARE IMPORTANT CHANGES TO POLICY TERMS AND CONDITIONS --
PLEASE READ CAREFULLY

12. SUPPLEMENTAL COVERAGES, page 7, item 7 ORDINANCE OR LAW is deleted in its
entirety and replaced by endorsement No. CP 04 05 10 00.

13. SUPPLEMENTAL COVERAGES, page 8, item 9 PERSONAL PROPERTY – ACQUIRED
LOCATIONS is amended as follows: 60 days is substituted for 90 days in the second paragraph.

14. SUPPLEMENTAL COVERAGES, page 8 item 10 TREES, SHRUBS AND PLANTS is amended
as follows: $5000 is substituted for $50,000 in the second paragraph.

15. SUPPLEMENTAL MARINE COVERAGES, page 8, item 2 FINE ARTS is deleted in its entirety
and replaced with the following: "We pay up to $50,000 for 'your' 'fine arts' at 'covered
locations' if listed in a schedule on file with us."

16. SUPPLEMENTAL MARINE COVERAGES, page 9, item 5 SALES REPRESENTATIVE
SAMPLES is deleted in its entirety.

17. PERILS EXCLUDED, page 10, item g WATER is amended as follows: Subparagraph 2) is
deleted.

18. EXCLUSIONS, page 12, item l. NEGLECT is deleted in its entirety.

19. ADDITIONAL PROPERTY NOT COVERED OR SUBJECT TO LIMITATIONS, page14 item 4
FURS is amended as follows: $2500 is substituted for $10,000.

20. ADDITIONAL PROPERTY NOT COVERED OR SUBJECT TO LIMITATIONS, page14 item 8
JEWELRY, ETC. is amended as follows: $2500 is substituted for $10,000.

21. ADDITIONAL PROPERTY NOT COVERED OR SUBJECT TO LIMITATIONS, page14 item
11 STAMPS, ETC. is amended as follows: $250 is substituted for $5,000.

22. WHAT MUST BE DONE IN CASE OF LOSS, page 15, the following item is added: 10. " 'You'
must promptly send us any legal papers or notices received concerning the loss."

23. VALUATION, page 16, item 2 REPLACEMENT COST is amended as follows: The third
paragraph is deleted in its entirety and replaced with the following: " Replacement cost valuation
does not apply until the damaged or destroyed property is repaired or replaced. If repairs or
replacement are not made as soon as reasonably possible after the loss, the value of the property
will be at actual cash value."

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section. G. – Definitions.

## A. Coverage

Coverage is provided as described below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

(i) Business Income including "Rental Value".

(ii) Business Income other than "Rental Value".

(iii) "Rental Value".

If option (i) above is selected, the term Business Income will include "Rental Value". If option (iii) above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(i) The portion of the building which you rent, lease or occupy; and

(ii) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

## 1. Business Income

Business Income means the:

a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

b. Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

## 2. Covered Causes Of Loss

See applicable Causes of Loss Form as shown in the Declarations.

## 3. Additional Coverages

### a. Extra Expense

Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

(1) We will pay any Extra Expense to avoid or minimize the "suspension" of business and to continue "operations":

(a) At the described premises; or

(b) At replacement premises or at temporary locations, including:

(i) Relocation expenses; and

(ii) Costs to equip and operate the replacement or temporary locations.

(2) We will pay any Extra Expense to minimize the "suspension" of business if you cannot continue "operations".

(3) We will pay any Extra Expense to:

(a) Repair or replace any property; or

Copyright, Insurance Services Office, Inc., 1999

(b) Research, replace or restore the lost information on damaged valuable papers and records;

to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

b. Civil Authority

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

The coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

The coverage for Extra Expense will begin immediately after the time of that action and will end:

(1) 3 consecutive weeks after the time of that action; or

(2) When your Business Income coverage ends;

whichever is later.

c. Alterations And New Buildings

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

(1) New buildings or structures, whether complete or under construction;

(2) Alterations or additions to existing buildings or structures; and

(3) Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

(a) Used in the construction, alterations or additions; or

(b) Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

d. Extended Business Income

(1) Business Income Other Than "Rental Value"

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

(a) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

(b) Ends on the earlier of:

(i) The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

(ii) 30 consecutive days after the date determined in (1)(a) above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(2) "Rental Value"

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

(a) Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

(b) Ends on the earlier of:

(i) The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

(ii) 30 consecutive days after the date determined in (2)(a) above.

 Copyright, Insurance Services Office, Inc., 1999

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

4. Coverage Extension

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

Newly Acquired Locations

a. You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

b. The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location.

c. Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

(1) This policy expires;

(2) 30 days expire after you acquire or begin to construct the property; or

(3) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

This Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

B. Exclusions And Limitations

See applicable Causes of Loss Form as shown in the Declarations.

C. Limits Of Insurance

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The limit applicable to the Coverage Extension is in addition to the Limit of Insurance.

Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

1. Alterations and New Buildings;

2. Civil Authority;

3. Extra Expense; or

4. Extended Business Income.

D. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

1. Appraisal

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

2. Duties In The Event Of Loss

a. You must see that the following are done in the event of loss:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when, and where the direct physical loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

  Copyright, Insurance Services Office, Inc., 1999   □

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(7) Cooperate with us in the investigation or settlement of the claim.

(8) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

3. Limitation – Electronic Media And Records

We will not pay for any loss of Business Income caused by direct physical loss of or damage to Electronic Media and Records after the longer of:

a. 60 consecutive days from the date of direct physical loss or damage; or

b. The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace, with reasonable speed and similar quality, other property at the described premises due to loss or damage caused by the same occurrence.

Electronic Media and Records are:

(1) Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

(2) Data stored on such media; or

(3) Programming records used for electronic data processing or electronically controlled equipment.

This limitation does not apply to Extra Expense.

Example No. 1:

A Covered Cause of Loss damages a computer on June 1. It takes until September 1 to replace the computer, and until October 1 to restore the data that was lost when the damage occurred. We will only pay for the Business Income loss sustained during the period June 1 – September 1. Loss during the period September 2 – October 1 is not covered.

Example No. 2:

A Covered Cause of Loss results in the loss of data processing programming records on August 1. The records are replaced on October 15. We will only pay for the Business Income loss sustained during the period August 1 – September 29 (60 consecutive days). Loss during the period September 30 – October 15 is not covered.

4. Loss Determination

a. The amount of Business Income loss will be determined based on:

(1) The Net Income of the business before the direct physical loss or damage occurred;

(2) The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

(3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

(4) Other relevant sources of information, including:

(a) Your financial records and accounting procedures;

(b) Bills, invoices and other vouchers; and

(c) Deeds, liens or contracts.

b. The amount of Extra Expense will be determined based on:

(1) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

(a) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

(b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

 Copyright, Insurance Services Office, Inc., 1999

(2) All necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

c. Resumption Of Operations

We will reduce the amount of your:

(1) Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

d. If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

5. Loss Payment

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

a. We have reached agreement with you on the amount of loss; or

b. An appraisal award has been made.

E. Additional Condition

Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

a. The Coinsurance percentage shown for Business Income in the Declarations; times

b. The sum of:

(1) The Net Income (Net Profit or Loss before income taxes), and

(2) Operating expenses, including payroll expenses,

that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Instead, we will determine the most we will pay using the following steps:

1. Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

2. Divide the Limit of Insurance for the described premises by the figure determined in Step 1.; and

3. Multiply the total amount of loss by the figure determined in Step 2.

We will pay the amount determined in Step 3. or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

1. Prepaid freight – outgoing;

2. Returns and allowances;

3. Discounts;

4. Bad debts;

5. Collection expenses;

6. Cost of raw stock and factory supplies consumed (including transportation charges);

7. Cost of merchandise sold (including transportation charges);

8. Cost of other supplies consumed (including transportation charges);

9. Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

10. Power, heat and refrigeration expenses that do not continue under contract (if Form CP 15 11 is attached);

11. All ordinary payroll expenses or the amount of payroll expense excluded (if Form CP 15 10 is attached); and

12. Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

          Copyright, Insurance Services Office, Inc., 1999            □

When: The Net Income and
operating expenses for
the 12 months following
the inception, or last
previous anniversary
date, of this policy at the
described premises
would have been                    $    400,000

The Coinsurance
percentage is                               50%

The Limit of Insurance is      $    150,000

The amount of loss is           $     80,000

Step 1:    $400,000 x 50% = $200,000

(the minimum amount of insurance to
meet your Coinsurance requirements)

Step 2:    $150,000 ÷ $200,000 = .75

Step 3:    $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining
$20,000 is not covered.

Example No. 2 (Adequate insurance):

When: The Net Income and
operating expenses for
the 12 months following
the inception, or last
previous anniversary
date, of this policy at the
described premises would
have been                           $    400,000

The Coinsurance
percentage is                               50%

The Limit of Insurance is      $    200,000

The amount of loss is           $     80,000

The minimum amount of insurance to meet your
Coinsurance requirement is $200,000 ($400,000 x
50%). Therefore, the Limit of Insurance in this
Example is adequate and no penalty applies. We
will pay no more than $80,000 (amount of loss).

This condition does not apply to the Extra Expense
Additional Coverage.

F. Optional Coverages

If shown as applicable in the Declarations, the
following Optional Coverages apply separately to
each item:

1. Maximum Period Of Indemnity

a. The Additional Condition, Coinsurance,
does not apply to this Coverage Form at the
described premises to which this Optional
Coverage applies.

b. The most we will pay for the total of
Business Income loss and Extra Expense is
the lesser of:

(1) The amount of loss sustained and
expenses incurred during the 120 days
immediately following the beginning of
the "period of restoration"; or

(2) The Limit of Insurance shown in the
Declarations.

2. Monthly Limit Of Indemnity

a. The Additional Condition, Coinsurance,
does not apply to this Coverage Form at the
described premises to which this Optional
Coverage applies.

b. The most we will pay for loss of Business
Income in each period of 30 consecutive
days after the beginning of the "period of
restoration" is:

(1) The Limit of Insurance, multiplied by

(2) The fraction shown in the Declarations
for this Optional Coverage.

Example:

When: The Limit of Insurance is      $    120,000

The fraction shown in the
Declarations for this
Optional Coverage is                         1/4

The most we will pay for
loss in each period of 30
consecutive days is:

$120,000 x 1/4 = $30,000

If, in this example, the
actual amount of loss is:

Days 1-30                              $     40,000

Days 31-60                                   20,000

Days 61-90                                   30,000

                                        $     90,000

We will pay:

Days 1-30                              $     30,000

Days 31-60                                   20,000

Days 61-90                                   30,000

                                        $     80,000

The remaining $10,000 is not covered.

3. Business Income Agreed Value

a. To activate this Optional Coverage:

(1) A Business Income Report/Work Sheet
must be submitted to us and must show
financial data for your "operations":

(a) During the 12 months prior to the
date of the Work Sheet; and

immediately following the inception of this Optional Coverage.

(2) The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

(a) The Coinsurance percentage shown in the Declarations; multiplied by

(b) The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

b. The Additional Condition, Coinsurance, is suspended until:

(1) 12 months after the effective date of this Optional Coverage; or

(2) The expiration date of this policy;

whichever occurs first.

c. We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

(1) Within 12 months of the effective date of this Optional Coverage; or

(2) When you request a change in your Business Income Limit of Insurance.

d. If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

(1) The Business Income Limit of Insurance; divided by

(2) The Agreed Value.

Example:

| When: | The Limit of Insurance is | $ | 100,000 |
| | The Agreed Value is | $ | 200,000 |
| | The amount of loss is | $ | 80,000 |
| Step (a): | $100,000 ÷ $200,000 = .50 | | |
| Step (b): | .50 x $80,000 = $40,000 | | |

We will pay $40,000. The remaining $40,000 is not covered.

4. Extended Period Of Indemnity

Under Paragraph A.3.d., Extended Business Income, the number "30" in Subparagraphs (1)(b) and (2)(b) is replaced by the number shown in the Declarations for this Optional Coverage.

G. Definitions

1. "Finished Stock" means stock you have manufactured.

"Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

"Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. "Operations" means:

a. Your business activities occurring at the described premises; and

b. The tenantability of the described premises, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

3. "Period of Restoration" means the period of time that:

a. Begins:

(1) 72 hours after the time of direct physical loss or damage for Business Income coverage; or

(2) Immediately after the time of direct physical loss or damage for Extra Expense coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

b. Ends on the earlier of:

(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2) The date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

(1) Regulates the construction, use or repair, or requires the tearing down of any property; or

(2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

4. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

a. Total anticipated rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, and

b. Amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be your obligations, and

c. Fair rental value of any portion of the described premises which is occupied by you.

a. The slowdown or cessation of your business activities; or

b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

Copyright, Insurance Services Office, Inc., 1999

CP 00 30 10 00    □

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ORDINANCE OR LAW COVERAGE

This endorsement modifies insurance provided under the following:

### COMMERCIAL OUTPUT PROGRAM

### SCHEDULE*

| Bldg. No./ Prem. No. | Cov. A | Cov. B Limit Of Insur. | Cov. C Limit Of Insur. | Cov. B And C Combined Limit Of Insur. |
|---|---|---|---|---|
| All    / All | X | $ 250,000 | $  250,000 | $            ** |
| / | ☐ | $ | $ | $            ** |
| / | ☐ | $ | $ | $            ** |

\* Information required to complete the Schedule, if not shown on this endorsement, will be shown in the Declarations.

\*\* Do not enter a Combined Limit of Insurance if individual Limits of Insurance are selected for Coverages B and C, or if one of these Coverages is not applicable.

A. Each Coverage – Coverage A, Coverage B and Coverage C – is provided under this endorsement only if that Coverage(s) is chosen by entry in the above Schedule and then only with respect to the building identified for that Coverage(s) in the Schedule.

B. Application Of Coverage(s)

The Coverage(s) provided by this endorsement apply only if both B.1. and B.2. are satisfied and are then subject to the qualifications set forth in B.3.

1. The ordinance or law:

   a. Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

   b. Is in force at the time of loss.

   But coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

2.a. The building sustains direct physical damage that is covered under this policy and such damage results in enforcement of the ordinance or law; or

   b. The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and the building damage in its entirety results in enforcement of the ordinance or law.

   c. But if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage under this endorsement even if the building has also sustained covered direct physical damage.

3. In the situation described in B.2.b. above, we will not pay the full amount of loss otherwise payable under the terms of Coverages A, B, and/or C of this endorsement. Instead, we will pay a proportion of such loss; meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

 Copyright, Insurance Services Office, Inc., 1999

(Section H. of this endorsement provides an example of this procedure.)

However, if the covered direct physical damage, alone, would have resulted in enforcement of the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of Coverages A, B and/or C of this endorsement.

C. We will not pay under this endorsement for the costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

D. Coverage

1. Coverage A – Coverage For Loss To The Undamaged Portion Of The Building

With respect to the building that has sustained covered direct physical damage, we will pay under Coverage A for the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building.

Coverage A is included within the Limit of Insurance shown in the Declarations as applicable to the covered building. Coverage A does not increase the Limit of Insurance.

2. Coverage B – Demolition Cost Coverage

With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property.

The Coinsurance Additional Condition does not apply to Demolition Cost Coverage.

3. Coverage C – Increased Cost Of Construction Coverage

a. With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

(1) Repair or reconstruct damaged portions of that building; and/or

(2) Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law.

However:

(1) This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

(2) We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

The Coinsurance Additional Condition does not apply to Increased Cost of Construction Coverage.

b. When a building is damaged or destroyed and Coverage C applies to that building in accordance with 3.a. above, coverage for the increased cost of construction also applies to repair or reconstruction of the following, subject to the same conditions stated in 3.a.:

(1) The cost of excavations, grading, backfilling and filling;

(2) Foundation of the building;

(3) Pilings; and

(4) Underground pipes, flues and drains.

The items listed in b.(1) through b.(4) above are deleted from Property Not Covered, but only with respect to the coverage described in this Provision, 3.b.

E. Loss Payment

1. All following loss payment Provisions, E.2. through E.5., are subject to the apportionment procedures set forth in Section B.3. of this endorsement.

Copyright, Insurance Services Office, Inc., 1999

2. When there is a loss in value of an undamaged portion of a building to which Coverage A applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

a. If the Replacement Cost Coverage Option applies and the property is being repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

(1) The amount you would actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

(2) The Limit of Insurance shown in the Declarations as applicable to the covered building.

b. If the Replacement Cost Coverage Option applies and the property is not repaired or replaced, or if the Replacement Cost Coverage Option does not apply, we will not pay more than the lesser of:

(1) The actual cash value of the building at the time of loss; or

(2) The Limit of Insurance shown in the Declarations as applicable to the covered building.

3. Unless Paragraph E.5. applies, loss payment under Coverage B – Demolition Cost Coverage will be determined as follows:

We will not pay more than the lesser of the following:

a. The amount you actually spend to demolish and clear the site of the described premises; or

b. The applicable Limit of Insurance shown for Coverage B in the Schedule above.

4. Unless Paragraph E.5. applies, loss payment under Coverage C – Increased Cost of Construction Coverage will be determined as follows:

a. We will not pay under Coverage C:

(1) Until the property is actually repaired or replaced, at the same or another premises; and

(2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

b. If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage C is the lesser of:

(1) The increased cost of construction at the same premises; or

(2) The applicable Limit of Insurance shown for Coverage C in the Schedule above.

c. If the ordinance or law requires relocation to another premises, the most we will pay under Coverage C is the lesser of:

(1) The increased cost of construction at the new premises; or

(2) The applicable Limit of Insurance shown for Coverage C in the Schedule above.

5. If a Combined Limit of Insurance is shown for Coverages B and C in the Schedule above, Paragraphs E.3. and E.4. of this endorsement do not apply with respect to the building that is subject to the Combined Limit, and the following loss payment provisions apply instead:

The most we will pay, for the total of all covered losses for Demolition Cost and Increased Cost of Construction, is the Combined Limit of Insurance shown for Coverages B and C in the Schedule above. Subject to this Combined Limit of Insurance, the following loss payment provisions apply:

a. For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

b. With respect to the Increased Cost of Construction:

(1) We will not pay for the increased cost of construction:

(a) Until the property is actually repaired or replaced, at the same or another premises; and

(b) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(2) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.

 Copyright, Insurance Services Office, Inc. 1999

relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

F. The terms of this endorsement apply separately to each building to which this endorsement applies.

G. Under this endorsement we will not pay for loss due to any ordinance or law that:

1. You were required to comply with before the loss, even if the building was undamaged; and

2. You failed to comply with.

Ordinance Or Law Coverage Losses (procedure as set forth in Section B.3. of this endorsement.)

Assume:

● Wind is a Covered Cause of Loss; Flood is an excluded Cause of Loss

● The building has a value of $200,000

● Total direct physical damage to building: $100,000

● The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value

● Portion of direct physical damage that is covered (caused by wind): $30,000

● Portion of direct physical damage that is not covered (caused by flood): $70,000

● Loss under Ordinance Or Law Coverage C of this endorsement: $60,000

Step 1:

Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$$\$30,000 \div \$100,000 = .30$$

Step 2:

Apply that proportion to the Ordinance or Law loss.

$$\$60,000 \times .30 = \$18,000$$

In this example, the most we will pay under this endorsement for the Coverage C loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

NOTE: The same procedure applies to losses under Coverages A and B of this endorsement.

   Copyright, Insurance Services Office, Inc., 1999   CP 04 05 10 00   □

COMMERCIAL PROPERTY
CP 04 17 06 95

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# UTILITY SERVICES – DIRECT DAMAGE

This endorsement modifies insurance provided under the following:

### COMMERCIAL OUTPUT PROGRAM

#### SCHEDULE*

| Water Supply | Communication Supply (not including overhead transmission lines) | Communication Supply (including overhead transmission lines) | Power Supply (not including overhead transmission lines) | Power Supply (including overhead transmission lines) |
|---|---|---|---|---|
| | | | XXX | |

| Prem. No. | Bldg. No. | Covered Property | Utility Services Limit of Insurance | Causes of Loss Form Applicable |
|---|---|---|---|---|

Building Property and Business Personal Property, all locations: $250,000 per affected location, up to a maximum aggregate limit of 25% of total insurable value of all covered locations.

A. We will pay for loss of or damage to Covered Property described in the Schedule, caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property, not on the described premises, if indicated by an "X" in the Schedule:

1. Water Supply Services, meaning the following types of property supplying water to the described premises:

   a. Pumping stations; and

   b. Water mains.

* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

Copyright, ISO Commercial Risk Services, Inc., 1994

... Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

a. Communication transmission lines, including optic fiber transmission lines;

b. Coaxial cables; and

c. Microwave radio relays except satellites.

It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

3. Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

a. Utility generating plants;

b. Switching stations;

c. Substations;

d. Transformers; and

e. Transmission lines.

It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

B. If a Utility Services Limit of Insurance is shown in the Schedule, such limit is part of, not in addition to, the Limit of Insurance stated in the Declarations or in the Separation of Coverage endorsement as applicable to the Covered Property.

If no Limit of Insurance is shown for Utility Services, coverage under this endorsement is subject to the applicable Limit of Insurance on the Covered Property as shown in the Declarations or in the Separation of Coverage endorsement. But this Utility Services endorsement does not increase the applicable Limit of Insurance.

Copyright, ISO Commercial Risk Services, Inc., 1994     CP 04 17 06 95    □

POLICY NUMBER:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# UTILITY SERVICES – TIME ELEMENT

This endorsement modifies insurance provided under the following:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

## SCHEDULE*

| Water Supply Property | Communication Supply Property (not including overhead transmission lines) | Communication Supply Property (including over-head transmission lines) | Power Supply Property (not including overhead transmission lines) | Power Supply Property (including overhead transmission lines) |
|---|---|---|---|---|
| | | | XXX | |

| Prem. No. | Bldg. No. | Causes of Loss Form Applicable | Limit of Insurance |
|---|---|---|---|

Business Income and Extra Expense, all locations: $250,000 per affected location, up to a maximum aggregate limit of 25% of total insurable value of all covered locations.

A. We will pay for loss of Business Income or Extra Expense at the described premises caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the property described in paragraph B. if such property is indicated by an "X" in the Schedule and is located outside of a covered building described in the Declarations.

B. Utility Services

1. Water Supply Services, meaning the following types of property supplying water to the described premises:
   a. Pumping stations; and
   b. Water mains.

2. Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services, to the described premises, such as:
   a. Communication transmission lines, including optic fiber transmission lines;
   b. Coaxial cables; and
   c. Microwave radio relays except satellites.

   It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

Copyright, ISO Commercial Risk Services, Inc., 1994

3. Power Supply Services, meaning the
   following types of property supplying electricity,
   steam or gas to the described premises:

   a. Utility generating plants;

   b. Switching stations;

   c. Substations;

   d. Transformers; and

   e. Transmission lines.

   It does not include overhead transmission lines
   unless indicated by an "X" in the Schedule.

C. The COINSURANCE Additional Condition does
   not apply to this endorsement.

         Copyright, ISO Commercial Risk Services, Inc., 1994                CP 15 45 06 95      □

COMMERCIAL PROPERTY
CP 10 40 08 99

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EARTHQUAKE AND VOLCANIC ERUPTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

## COMMERCIAL OUTPUT PROGRAM

A. When this endorsement is attached to the Standard Property Policy, the terms Coverage Part and Coverage Form in this endorsement are replaced by the term Policy.

B. This endorsement applies to the Covered Property and Coverages for which an Earthquake – Volcanic Eruption Limit of Insurance is shown in the Declarations.

C. Additional Covered Causes Of Loss

1. The following are added to the Covered Causes Of Loss:

   a. Earthquake.

   b. Volcanic Eruption, meaning the eruption, explosion or effusion of a volcano.

   All Earthquake shocks or Volcanic Eruptions that occur within any 168-hour period will constitute a single Earthquake or Volcanic Eruption. The expiration of this policy will not reduce the 168-hour period.

2. If the Declarations indicate that this endorsement covers Earthquake - Sprinkler Leakage Only, then the Covered Causes of Loss in Paragraph C.1. of this endorsement do not apply, and the following apply instead:

   a. Sprinkler Leakage resulting from Earthquake.

   b. Sprinkler Leakage resulting from Volcanic Eruption. Volcanic Eruption means the eruption, explosion or effusion of a volcano.

   All Earthquake shocks or Volcanic Eruptions that occur within any 168-hour period will constitute a single Earthquake or Volcanic Eruption. The expiration of this policy will not reduce the 168-hour period.

D. Exclusions, Limitations And Related Provisions

1. The Exclusions and Limitation(s) sections of the Causes Of Loss Form (and the Exclusions section of the Mortgageholders Errors And Omissions Coverage Form and the Standard Property Policy) apply to coverage provided under this endorsement, except as provided in: D.2. and D.3. below.

2. To the extent that the Earth Movement Exclusion might conflict with coverage provided under this endorsement, the Earth Movement Exclusion does not apply.

3. The exclusion of collapse, in the Causes Of Loss – Special Form and Mortgageholders Errors And Omissions Coverage Form, does not apply to collapse caused by Earthquake or Volcanic Eruption.

4. The Additional Coverage – Collapse, in the Causes Of Loss – Broad Form, Causes Of Loss – Special Form and Mortgageholders Errors And Omissions Coverage Form, does not apply to the coverage provided under this endorsement. This endorsement includes coverage for collapse caused by Earthquake or Volcanic Eruption.

5. We will not pay for loss or damage caused directly or indirectly by tidal wave or tsunami, even if attributable to an Earthquake or Volcanic Eruption.

6. We will not pay for loss or damage caused by or resulting from any Earthquake or Volcanic Eruption that begins before the inception of this insurance.

7. The Ordinance Or Law Exclusion in this Coverage Part continues to apply with respect to any loss under this Coverage Part including any loss under this endorsement, unless Ordinance Or Law Coverage is added by endorsement.

Copyright, Insurance Services Office, Inc., 1998

8. We will not pay for loss of or damage to exterior masonry veneer (except stucco) on wood frame walls caused by or resulting from Earthquake or Volcanic Eruption. The value of such veneer will not be included in the value of Covered Property or the amount of loss when applying the Property Damage Deductible applicable to this endorsement.

This limitation, D.8., does not apply if:

a. The Declarations indicate that the "Including Masonry Veneer" option applies or the premises description in the Declarations specifically states "Including Masonry Veneer"; or

b. Less than 10% of the total outside wall area is faced with masonry veneer (excluding stucco).

9. Under this Coverage Part, as set forth under Property Not Covered in the Coverage Form to which this endorsement is attached, land is not covered property, nor is the cost of excavations, grading, backfilling or filling. Therefore, coverage under this endorsement does not include the cost of restoring or remediating land.

E. Property Damage Deductible

1. The provisions of Section E.2. of this endorsement are applicable to all Coverage Forms except:

a. Business Income (And Extra Expense) Coverage Form;

b. Business Income (Without Extra Expense) Coverage Form;

c. Extra Expense Coverage Form.

2. The Deductible, if any, in this Coverage Part is replaced by the following with respect to Earthquake and Volcanic Eruption:

a. All Policies

(1) The Deductible provisions apply to each Earthquake or Volcanic Eruption.

(2) Separate Deductibles are calculated for, and apply to, each building, personal property at each building and personal property in the open. Deductibles are separately calculated and applied even if:

(a) Two or more buildings sustain loss or damage;

(b) Personal property at two or more buildings sustains loss or damage; and/or

(c) A building and the personal property in that building sustain loss or damage.

(3) We will not pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance, after any reduction required by any of the following: Coinsurance Condition, Agreed Value Optional Coverage, Additional Condition — Need for Adequate Insurance or Additional Condition – Need for Full Reports.

(4) When property is covered under the Coverage Extension for Newly Acquired or Constructed Property: In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to a percentage of the value of the property at time of loss. The applicable percentage for Newly Acquired or Constructed Property is the highest percentage shown in the Declarations for any described premises.

(5) If there is loss or damage caused by Earthquake or Volcanic Eruption, and loss or damage caused by a Cause of Loss (e.g., fire) that is covered by means of an exception to the Earth Movement Exclusion, then the only applicable Deductible provisions are those stated in this endorsement.

b. Calculation Of The Deductible – Specific Insurance Other Than Builders Risk

(1) Property Not Subject To Value Reporting Forms

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to a percentage (as shown in the Declarations; concerning the Earthquake – Volcanic Eruption Deductible) of the Limit of Insurance applicable to the property that has sustained loss or damage.

(2) Property Subject To Value Reporting Forms

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to a percentage (as shown in the Declarations, concerning the Earthquake – Volcanic Eruption Deductible) of the value of the property that has sustained loss or damage. The value to be used is the latest value shown in the most recent Report of Values on file with us.

 Copyright, Insurance Services Office, Inc., 1998 CP 10 40 08 99    □

However:

  (a) If the most recent Report of Values shows less than the full value of the property on the report dates, we will determine the deductible amount as a percentage of the full value as of the report dates.

  (b) If the first Report of Values is not filed with us prior to loss or damage, we will determine the deductible amount as a percentage of the applicable Limit of Insurance.

c. Calculation Of The Deductible – Blanket Insurance Other Than Builders Risk

  (1) Property Not Subject To Value Reporting Forms

    In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to a percentage (as shown in the Declarations, concerning the Earthquake – Volcanic Eruption Deductible) of the value of the property that has sustained loss or damage. The value to be used is that shown in the most recent Statement of Values on file with us.

  (2) Property Subject To Value Reporting Forms

    In determining the amount, if any, that we will pay for property that has sustained loss or damage, we will deduct an amount equal to a percentage (as shown in the Declarations, concerning the Earthquake – Volcanic Eruption Deductible) of the value of that property as of the time of loss or damage.

d. Calculation Of The Deductible – Builders Risk Insurance

  (1) Builders Risk Other Than Reporting Form

    In determining the amount, if any, that we will pay for property that has sustained loss or damage, we will deduct an amount equal to a percentage (as shown in the Declarations, concerning the Earthquake – Volcanic Eruption Deductible) of the actual cash value of that property as of the time of loss or damage.

  (2) Builders Risk Reporting Form

    In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to a percentage (as shown in the Declarations, concerning the Earthquake – Volcanic Eruption Deductible) of the value of the property that has sustained loss or damage. The value to be used is the actual cash value shown in the most recent Report of Values on file with us.

    However:

    (a) If the most recent Report of Values shows less than the actual cash value of the property on the report date, we will determine the deductible amount as a percentage of the actual cash value as of the report date.

    (b) If the first Report of Values is not filed with us prior to loss or damage, we will determine the deductible amount as a percentage of the actual cash value of the property as of the time of loss or damage.

F. Examples – Application Of Deductible In E.2.:

EXAMPLE #1 – SPECIFIC INSURANCE (E.2.b.(1))

The amount of loss to the damaged building is $60,000.

The value of the damaged building at time of loss is $100,000. The Coinsurance percentage shown in the Declarations is 80%; the minimum Limit of Insurance needed to meet the coinsurance requirement is $80,000 (80% of $100,000).

The actual Limit of Insurance on the damaged building is $70,000.

The Deductible is 5%.

Step (1): $70,000 ÷ $80,000 = .875
Step (2): $60,000 X .875 = $52,500
Step (3): $70,000 X 5% = $3,500
Step (4): $52,500 – $3,500 = $49,000

The most we will pay is $49,000. The remainder of the loss, $11,000, is not covered due to the Coinsurance penalty for inadequate insurance (steps (1) and (2)) and the application of the Deductible (steps (3) and (4)).

... ... ... #2 – SPECIFIC INSURANCE
(E.2.b.(1))

The amounts of loss to the damaged property are $60,000 (building) and $40,000 (business personal property in building).

The value of the damaged building at time of loss is $100,000. The value of the business personal property in that building is $80,000. The Coinsurance percentage shown in the Declarations is 80%; the minimum Limits of Insurance needed to meet the coinsurance requirement are $80,000 (80% of $100,000) for the building and $64,000 (80% of $80,000) for the business personal property.

The actual Limits of Insurance on the damaged property are $80,000 on the building and $64,000 on the business personal property (therefore no Coinsurance penalty).

The Deductible is 10%.

Building

Step (1): $80,000 X 10% = $8,000
Step (2): $60,000 – $8,000 = $52,000

Business Personal Property

Step (1): $64,000 X 10% = $6,400
Step (2): $40,000 – $6,400 = $33,600

The most we will pay is $85,600. That portion of the total loss not covered due to application of the Deductible is $14,400.

EXAMPLE #3 – BLANKET INSURANCE
(E.2.c.(1))

The sum of the values of Building #1 ($500,000), Building #2 ($500,000) and Building #3 ($1,000,000), as shown in the most recent Statement of Values on file with us, is $2,000,000.

The Coinsurance percentage shown in the Declarations is 90%; the minimum Blanket Limit of Insurance needed to meet the coinsurance requirement is $1,800,000 (90% of $2,000,000).

The actual Blanket Limit of Insurance covering Buildings #1, #2, and #3, shown in the Declarations, is $1,800,000 (therefore no Coinsurance penalty).

Buildings #1 and #2 have sustained damage; the amounts of loss to these buildings are $40,000 (Building #1) and $60,000 (Building #2).

The Deductible is 5%.

Building #1

Step (1): $500,000 X 5% = $25,000
Step (2): $40,000 – $25,000 = $15,000

Building #2

Step (1): $500,000 X 5% = $25,000
Step (2): $60,000 – $25,000 = $35,000

The most we will pay is $50,000. That portion of the total loss not covered due to application of the Deductible is $50,000.

EXAMPLE #4 – BLANKET INSURANCE
(E.2.c.(1))

The sum of the values of Building #1 ($500,000), Building #2 ($500,000), Business Personal Property at Building #1 ($250,000) and Business Personal Property at Building #2 ($250,000), as shown in the most recent Statement of Values on file with us, is $1,500,000.

The Coinsurance percentage shown in the Declarations is 90%; the minimum Blanket Limit of Insurance needed to meet the coinsurance requirement is $1,350,000 (90% of $1,500,000).

The actual Blanket Limit of Insurance covering Buildings #1 and #2 and Business Personal Property at Buildings #1 and #2, shown in the Declarations, is $1,350,000. Therefore there is no Coinsurance penalty.

Building #1 and Business Personal Property at Building #1 have sustained damage; the amounts of loss are $95,000 (Building) and $5,000 (Business Personal Property).

The Deductible is 10%.

Building

Step (1): $500,000 X 10% = $50,000
Step (2): $95,000 – $50,000 = $45,000

Business Personal Property

Step (1): $250,000 X 10% = $25,000
The loss, $5,000, does not exceed the deductible.

The most we will pay is $45,000. The remainder of the building loss, $50,000, is not covered due to application of the Deductible. There is no loss payment for the business personal property.

G. Business Income And Extra Expense Period Of Restoration

This Section G., is applicable only to the Coverage Forms specified below:

1. Business Income (And Extra Expense) Coverage Form;

2. Business Income (Without Extra Expense) Coverage Form;

3. Extra Expense Coverage Form.

The "period of restoration" definition stated in the Coverage Form, or in any endorsement amending the beginning of the "period of restoration", applies to each Earthquake or Volcanic Eruption. A single Earthquake or Volcanic Eruption is defined in Section C. of this endorsement.

 Copyright, Insurance Services Office, Inc., 1998 CP 10 40 08 99   □

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FLOOD COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

## COMMERCIAL OUTPUT PROGRAM

A. When this endorsement is attached to the Standard Property Policy, the terms Coverage Part and Coverage Form in this endorsement are replaced by the term Policy.

B. This endorsement applies to the Covered Property and Coverages for which a Flood Limit of Insurance is shown in the Flood Coverage Schedule or in the Declarations.

C. Additional Covered Cause Of Loss

The following is added to the Covered Causes Of Loss:

Flood, meaning a general and temporary condition of partial or complete inundation of normally dry land areas due to:

1. The overflow of inland or tidal waters;

2. The unusual or rapid accumulation or runoff of surface waters from any source; or

3. Mudslides or mudflows which are caused by flooding as defined in C.2. above. For the purpose of this Covered Cause Of Loss, a mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current.

All flooding in a continuous or protracted event will constitute a single flood.

D. Exclusions, Limitations And Related Provisions

1. The Exclusions and Limitation(s) sections of the Causes Of Loss Form (and the Exclusions section of the Mortgageholders Errors And Omissions Coverage Form and the Standard Property Policy) apply to coverage provided under this endorsement except as provided in D.2. and D.3. below.

2. To the extent that a part of the Water Exclusion might conflict with coverage provided under this endorsement, that part of the Water Exclusion does not apply.

3. To the extent that a tsunami causes the overflow of tidal waters, the exclusion of earthquake, in the Earth Movement Exclusion, does not apply.

4. The Ordinance Or Law Exclusion in this Coverage Part continues to apply with respect to any loss under this Coverage Part including any loss under this endorsement, unless Ordinance Or Law Coverage is added by endorsement.

5. The following exclusions and limitations are added and apply to coverage under this endorsement:

a. We will not pay for any loss or damage caused by or resulting from any Flood that begins before or within 72 hours after the inception date of this endorsement. If you request and we provide an increase in the stated Limit of Insurance for Flood, the increase will not apply to loss or damage from any Flood that begins before or within 72 hours after your request was made.

If the Flood is due to the overflow of inland or tidal waters, then the Flood is considered to begin when the water first overflows its banks.

b. We will not pay for loss or damage caused by or resulting from destabilization of land arising from the accumulation of water in subsurface land areas.

    Copyright, Insurance Services Office, Inc., 1999       □

under Property Not Covered in the Coverage Form to which this endorsement is attached, land is not covered property, nor is the cost of excavations, grading, backfilling or filling. Therefore, coverage under this endorsement does not include the cost of restoring or remediating land due to the collapse or sinking of land caused by or resulting from Flood. However, coverage under this endorsement includes damage to the covered portions of the building and to covered personal property, caused by collapse or sinking of land along the shore of a body of water as the result of erosion or undermining caused by waves or currents of water which exceed the cyclical levels and cause Flood.

d. We do not cover loss or damage by Flood to personal property in the open except to the extent that such coverage, if any, is specified in the Flood Coverage Schedule or in the Declarations.

e. Property Not Covered, in the Coverage Form to which this endorsement is attached, is amended and supplemented as follows with respect to Flood Coverage:

(1) Property Not Covered includes any building or other property that is not eligible for flood insurance pursuant to the provisions of the Coastal Barrier Resources Act, 16 U.S.C. 3501 et seq. and the Coastal Barrier Improvement Act of 1990, Pub. L. 101-591, 16 U.S.C. 3501 et seq.

(2) Property Not Covered includes boat houses and open structures, and any property in or on the foregoing, if the structure is located on or over a body of water.

(3) If bulkheads, pilings, piers, wharves, docks, or retaining walls that are not part of a building, have been removed from Property Not Covered and added as Covered Property by separate endorsement, this Flood Coverage Endorsement does not apply to such property.

(4) The following are removed from Property Not Covered and are therefore Covered Property:

(a) Foundations below the lowest basement floor or the subsurface of the ground; and

(b) Underground pipes, flues and drains.

... will not pay for loss or damage caused by sewer back-up or overflow unless such back-up or overflow results from Flood and occurs within 72 hours after the flood recedes.

E. Additional Coverages And Coverage Extensions

1. With respect to Flood Coverage, the Debris Removal Additional Coverage (and any additional limit for Debris Removal under a Limit Of Insurance clause or an endorsement) is not applicable and is replaced by the following:

DEBRIS REMOVAL

a. We will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from Flood. However, we will not pay to remove deposits of mud or earth from the grounds of the described premises.

b. We will also pay the expense to remove debris of Covered Property that has floated or been hurled off the described premises by Flood.

c. This coverage for Debris Removal, as set forth in E.1.a. and E.1.b. above, does not increase the applicable Limit of Insurance for Flood. Therefore, the most we will pay for the total of debris removal and loss or damage to Covered Property is the Limit of Insurance for Flood that applies to the Covered Property at the affected described premises covered under this endorsement.

2. With respect to Flood Coverage, the Coverage Extension for Newly Acquired or Constructed Property is amended by adding the following:

a. With respect to Flood Coverage, this Coverage Extension does not apply to any building or structure that is not fully enclosed by walls and roof.

b. With respect to a building or structure covered under this Coverage Extension, the amounts of coverage stated in the Coverage Extension do not apply to Flood Coverage. Instead, the most we will pay for all loss or damage to property covered under this Coverage Extension is 10% of the total of all Limits of Insurance for Flood Coverage as provided under this endorsement. Such coverage does not increase the Limit of Insurance for Flood.

 Copyright, Insurance Services Office, Inc., 1999 □

3. with respect to any applicable Additional Coverages and Coverage Extensions in the Coverage Form to which this endorsement is attached, other than those addressed in E.1. and E.2. above, amounts payable under such other provisions, as set forth therein, do not increase the Limit of Insurance for Flood.

## F. Coinsurance

1. The Coinsurance Condition, if any, in the applicable Coverage Form applies to the coverage provided under this endorsement, unless the No-Coinsurance Option, in the Flood Coverage Schedule or in the Declarations, is specified as being applicable.

2. Various Coverage Extensions, in the Coverage Form to which this endorsement is attached, require coinsurance. If the No-Coinsurance Option applies, then the coinsurance requirement for such Coverage Extensions is eliminated.

## G. Limit Of Insurance

### 1. General Information

Flood Coverage may be written at a Limit of Insurance that is equal to or less than the Limit of Insurance which applies to other Covered Causes of Loss (e.g., Fire) under this Commercial Property Coverage Part.

The Limit of Insurance for Flood is shown in the Flood Coverage Schedule or in the Declarations. If such Limit is not shown, then the Limit applicable to Fire also applies to Flood.

### 2. Application Of Limit And Aggregate

The Limit of Insurance for Flood is the most we will pay in a single occurrence of Flood for loss or damage caused by the Flood. If there is more than one Flood in a 12-month period (starting with the beginning of the present annual policy period), the most we will pay for the total of all loss or damage sustained during that period of time and caused by Flood is the amount that is identified as the Annual Aggregate for Flood as shown in the Flood Coverage Schedule or the Declarations.

If the Limit of Insurance and the Annual Aggregate amount are the same, or if there is no amount stated as an Annual Aggregate, then the Limit of Insurance is the most we will pay for the total of all loss or damage that is caused by Flood in a 12-month period (starting with the beginning of the present annual policy period), even if there is more than one occurrence of Flood during that period of time. Thus, if the first Flood does not exhaust the applicable Limit of Insurance, then the balance of that Limit is available for a subsequent Flood(s).

If a single occurrence of Flood begins during one annual policy period and ends during the following annual policy period, any Limit of Insurance or Annual Aggregate applicable to the following annual policy period will not apply to that Flood.

### 3. Ensuing Loss

In the event of covered ensuing loss, for example, loss caused by Fire, Explosion and/or Sprinkler Leakage which results from the Flood, the most we will pay, for the total of all loss or damage caused by flood, fire, explosion and sprinkler leakage, is the Limit of Insurance applicable to Fire. We will not pay the sum of the Fire and Flood Limits.

## EXAMPLES – ENSUING LOSS

Two examples follow, using these facts: The Commercial Property Coverage Part, in these examples, includes the Causes of Loss – Basic Form (which covers fire) and this Flood Coverage Endorsement. A building is damaged by Flood and by Fire which is caused by the Flood. The value of the damaged building is $1,000,000. The Limit of Insurance applicable to the building, for the Basic Causes of Loss, is $800,000. The Limit of Insurance for Flood is $400,000. The Flood Deductible amount is $5,000.

### EXAMPLE #1

The damage due to Flood is $500,000. The damage due to Fire is $500,000.

Payment for Flood damage is $400,000 ($500,000 damage minus $5,000 Flood deductible = $495,000; Limit is $400,000)

Payment for Fire damage is $400,000 ($500,000 damage capped at the difference between the Basic Limit and the Flood Limit)

Total Loss Payment is $800,000.

 Copyright, Insurance Services Office, Inc., 1999 □

EXAMPLE #2

The damage due to Flood is $800,000. The damage due to Fire is $100,000.

Payment for Flood damage is $400,000 ($800,000 damage minus $5,000 Flood deductible = $795,000; Limit is $400,000)

Payment for Fire damage is $100,000 (amount of damage)

Total Loss Payment is $500,000.

Note: These Examples are given only to illustrate the situation of flood and ensuing loss. Therefore, the loss payment stated for flood damage does not address the situation where another policy also covers the flood damage.

H. Deductible

1. The Deductible for coverage provided under this endorsement is the Deductible applicable to Flood as shown in the Flood Coverage Schedule or in the Declarations.

2. We will not pay that part of the loss that is attributable to any Deductible(s) in the National Flood Insurance Program policy.

3. If Flood results in another Covered Cause of Loss and if both Covered Causes of Loss cause loss or damage, then only the higher deductible applies (e.g., the Flood deductible or the Fire deductible).

I. Other Insurance

The Other Insurance Commercial Property Condition is replaced by the following with respect to the coverage provided under this endorsement:

1. If the loss is also covered under a National Flood Insurance Program (NFIP) policy, or if the property is eligible to be written under an NFIP policy but there is no such policy in effect, then we will pay only for the amount of loss in excess of the maximum limit that can be insured under that policy. This provision applies whether or not the maximum NFIP limit was obtained or maintained, and whether or not you can collect on the NFIP policy. We will not, under any circumstances, pay more than the applicable Limit of Insurance for Flood as stated in the Flood Coverage Schedule or the Declarations of this Coverage Part.

However, this Provision I.1. does not apply under the following circumstances:

a. At the time of loss, the property is eligible to be written under an NFIP policy but such policy is not in effect due solely to ineligibility of the property at the time this Flood Coverage Endorsement was written; or

b. An NFIP policy is not in effect because we have agreed to write this Flood Coverage Endorsement without underlying NFIP coverage. There is such an agreement only if the Flood Coverage Schedule or the Declarations indicate that the Underlying Insurance Waiver applies.

2. If there is other insurance covering the loss, other than that described in I.1. above, we will pay our share of the loss. Our share is the proportion that the applicable Limit of Insurance under this endorsement bears to the total of the applicable Limits of Insurance under all other such insurance. But we will not pay more than the applicable Limit of Insurance stated in the Flood Coverage Schedule or the Declarations of this Coverage Part.

 Copyright, Insurance Services Office, Inc., 1999 CP 10 65 10 00

Policy Change Number___1____

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

COMMERCIAL OUTPUT PROGRAM
POLICY CHANGES

THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBERED BELOW:

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |

| NAMED INSURED | | AUTHORIZED REPRESENTATIVE |

CHANGES

COMMON POLICY CONDITIONS, Form No. IL 00 17 11 98, clause A.2.b
(Cancellation), is amended as follows: 60 days is substituted for 30 days.

PREMIUM ADJUSTMENT

NONE – CHANGES CONTEMPLATED IN POLICY PREMIUM

CP 12 01 11 85    Copyright , ISO Commercial Risk Services, Inc., 1983

Policy Change Number___2___

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### COMMERCIAL OUTPUT PROGRAM
### POLICY CHANGES

THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBERED BELOW:

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
| --- | --- | --- |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
| --- | --- |

### CHANGES

EARTHQUAKE AND VOLCANIC ERUPTION ENDORSEMENT, Form No. CP 10
40 08 99, is amended as follows:

1. This policy does not cover property situated in ISO earthquake zones 1, 2 or 3.
2. Wherever it appears, "Covered Causes if Loss" is replaced with "Perils Covered."
3. Wherever it appears, "Causes of Loss Form" is replaced with "Commercial Output Program."
4. Wherever it appears, "Additional Coverage - Collapse" is replaced with "Other Coverages - Collapse."

### PREMIUM ADJUSTMENT

NONE – CHANGES CONTEMPLATED IN POLICY PREMIUM

CP 12 01 11 85    Copyright, ISO Commercial Risk Services, Inc., 1985

Policy Change Number___3____

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

COMMERCIAL OUTPUT PROGRAM
POLICY CHANGES

THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBERED BELOW:

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|

CHANGES

FLOOD COVERAGE ENDORSEMENT, Form No. CP 10 65 10 00, is amended as follows:

1. This policy does not cover property situated in FEMA flood zones A, B or V.
2. Wherever it appears, "Covered Causes of Loss" is replaced with "Perils Covered."
3. Wherever it appears, "Causes of Loss Form" is replaced with "Commercial Output Program."
4. Wherever it appears, "The Other Insurance Commercial Property Condition" is replaced with "The Insurance Under More Than One Policy provision in the section entitled How Much We Pay."

PREMIUM ADJUSTMENT

· NONE – CHANGES CONTEMPLATED IN POLICY PREMIUM

CP 12 01 11 85    Copyright, ISO Commercial Risk Services, Inc., 1983

Policy Change Number___4___

(2) Counterfeit United States or Canadian paper currency accepted in the regular course of business.

The most we will pay under this endorsement in any one occurrence is $5,000. This limit is an additional amount of insurance.

## Definitions:

"Loss" means accidental loss or damage.

"Money" means:

  a. Currency, coins and bank notes whether or not in current use; and
  b. Travelers checks, register checks and money orders held for sale to the public.

"Securities" means:

  a. Tokens, tickets, revenue and other stamps whether or not in current use;
  b. Evidences of debt issued in connection with credit or charge cards, which are not of your own issue:

But does not include "money." Lottery tickets held for sale are not "securities."

---

## PREMIUM ADJUSTMENT

NONE – CHANGES CONTEMPLATED IN POLICY PREMIUM

---

CP 12 01 11 85   ·  Copyright , ISO Commercial Risk Services, Inc., 1983

Page 3 of 3

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

COMMERCIAL OUTPUT PROGRAM
POLICY CHANGES

THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBERED BELOW:

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|

CHANGES

Money and Securities and Money Orders and Counterfeit Paper Currency

The policy is amended with the addition of Money and Securities coverage as follows:

(1)  We will pay for "loss" to "money" and "securities" used in your business while at a bank or savings institution, at the described premises, or in transit between any of these places, resulting directly from:

   (a)  Theft, meaning any act of stealing;

   (b)  Disappearance; or

   (c)  Destruction

(2)  In addition to the Limitations and Exclusions in the Commercial Output Program Form, we will not pay for "loss":

   (a)  Resulting from accounting or arithmetical errors or omissions;

   (b)  Due to the giving or surrendering of property in any exchange or purchase; or

   (c)  Of property contained in any money-operated device unless the amount of money deposited in it is recorded by a continuous recording instrument in the device.

(3)  The most we will pay under this endorsement in any one occurrence is:

   (a)  $5,000 for "money" and "securities" while:

Page 1 of 3

        (i)     In or on the described premises; or

        (ii)    Within a bank or savings institution;

    (b)    $5,000 for "money" and "securities" while anywhere else.

(4)   All "loss"

    (a)    Caused by one or more persons; or

    (b)    Involving a single act or series of related acts;

   is considered one occurrence

(5)   You must keep records of all "money" and "securities" so we can verify the amount of any "loss".

(6)   None of the Additional Coverages or Supplemental Coverages apply to coverage provided by this endorsement.

This coverage is in addition to the applicable Limits of Insurance provided by the Commercial Output Program form.

The policy is amended with the addition of Money Orders and Counterfeit Paper Currency coverage as follows:

We will pay for "loss" due to the acceptance in good faith of :

(1) Any post office or express money order accepted in exchange for merchandise, "money" or services issued, or purported to have been issued, by any post office or express company, if such money order is not paid upon presentation; or

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### COMMERCIAL OUTPUT PROGRAM
### POLICY CHANGES

THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBERED BELOW:

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|

### CHANGES

### Condominium Association Changes

The COMMERCIAL OUTPUT PROGRAM policy form is amended as follows:

1. The following are added to PROPERTY COVERED, BUILDING PROPERTY:

Any of the following types of property contained within a unit, regardless of ownership, if your Condominium Association Agreement requires you to insure it:

(a)Fixtures, improvements and alterations that are a part of the building or structure; and

(b)Appliances, such as those used for refrigerating, ventilating, cooking, dishwashing, laundering, security or housekeeping.

But Building does not include other personal property owned by, used by or in the care, custody or control of a unit-owner.

2. The following are added to PROPERTY COVERED, BUSINESS PERSONAL PROPERTY:

(a)Personal property owned by you or owned indivisibly by all unit-owners;

(b)Your interest in the labor, materials or services furnished or arranged by you on personal property of others;

(c)Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

But covered Business Personal Property does not include personal property owned only by a unit-owner.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

COMMERCIAL OUTPUT PROGRAM
POLICY CHANGES

THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBERED BELOW:

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| | | |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| | |

CHANGES

Electronic Data Processing Hardware and Software

We will pay for direct physical "loss" to your electronic data processing "hardware", "data" and "media" at the premises described in the declarations caused by or resulting from:

(1) Changes in your electrical power supply, including interruption of power, power surge, blackout or brownout, if the cause of such event originates within 1,000 feet of any Covered Location under this policy.
(2) Dishonest acts committed by your employees acting alone or in collusion with other persons, except you or your partners, directors or trustees.
(3) Dampness or dryness of atmosphere or changes in or extremes of temperature.
(4) "Flood".
(5) Earth movement (other than sinkhole collapse), such as an earthquake, landslide or earth sinking, rising or shifting.

The value of "data" or "media" under this coverage will be either:

(1) The actual cost of reproducing or replacing the lost or damaged "data" and "media", if you actually reproduce or replace them; or
(2) The cost to replace blank "media" with substantially identical property.

We will not cover "data" and "media" which cannot be reproduced or replaced with others of the same kind or quality.

The most we will be under this coverage in any one occurrence is $10,000. This coverage does not increase the limits provided by this policy.

Policy Change Number___5____

3. The following is added to LOSS PAYMENT:

If you name an insurance trustee, we will adjust losses with you, but we will pay the insurance trustee. If we pay the trustee, the payments will satisfy your claims against us.

4. The following is added to HOW MUCH WE PAY:

A unit-owner may have other insurance covering the same property as this insurance. This insurance is intended to be primary, and not to contribute with such other insurance.

5. The following is added to OTHER CONDITIONS:

We waive our rights to recover payment from any unit-owner of the condominium that is shown in the Declarations.

---

PREMIUM ADJUSTMENT

NONE – CHANGES CONTEMPLATED IN POLICY PREMIUM

---

CP 12 01 11 85    Copyright . ISO Commercial Risk Services, Inc., 1983

Page 2 of 2

## Computer Virus Coverage

We will pay:

(1) Your expenses to extract a "computer virus" from covered electronic data processing "hardware", "data" and "media", and

(2) The expenses you incur to restore such "hardware", "data" and "media" to their condition prior to the loss, or the cost to replace such property, whichever is less.

These expenses must be as a direct result of physical "loss" from a "computer virus" that occurs and becomes known to you during the policy period. We will only pay these expenses if you report them to us within 180 days of the date of the direct, physical "loss."

The most we will pay under this coverage in any one occurrence is $2,500. This is an additional amount of insurance.

This endorsement is the only portion of this policy that provides coverage for a "computer virus" "loss", regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

## Computer Upgrade

(1) In the event of "loss" to covered electronic data processing "hardware" caused by or resulting from a covered peril, we will allow you to use the amount we pay you for that "loss" to purchase upgraded electronic data processing "hardware."

(2) If you choose to upgrade that equipment, we will pay for the expenses you incur to convert your "data" and "media" to the upgraded system.

The most we will pay under this coverage is $1,000 per day, but not more than $5,000 in any one occurrence. This is an additional amount of insurance.

Policy Change Number___6____

## Definitions:

"Loss" means accidental loss or damage.

"Data" means facts, figures, concepts, or instructions that are in a form that can be communicated, interpreted or processed by electronic data processing systems.

"Media" means materials on which "data" can be recorded, such as magnetic tapes, disk packs, paper tapes and cards.

"Computer Virus" means unauthorized intrusive codes or programming that are entered into covered "hardware", "data" or "media" and interrupt your operations at the described premises.

---

### PREMIUM ADJUSTMENT

NONE – CHANGES CONTEMPLATED IN POLICY PREMIUM

---

CP 12 01 11 85. . . Copyright, ISO Commercial Risk Services, Inc., 1985

Policy Change Number_____ / ____

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### COMMERCIAL OUTPUT PROGRAM
### POLICY CHANGES

THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBERED BELOW:

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|

### CHANGES

### Joint Loss

In the event the insured suffers a loss of or damage to property insured by this policy and also insured by a boiler and machinery policy, and there is disagreement between this insurer and the boiler and machinery insurer with respect to:

(1) whether the loss or damage was caused by a peril insured by this policy, or by an accident insured against by the boiler and machinery policy, or

(2) the extent of participation of each policy,

then, after agreement of the insured, this company and the boiler and machinery insurer as to the total amount of the loss or damage recoverable under both policies, we will, upon written request of the insured, pay to the insured, in addition to that portion of the total recoverable loss or damage to which we admit liability:

one-half of that portion of the total recoverable loss or damage which is in disagreement (but in no event more than the minimum amount remaining payable under either this policy or the boiler and machinery policy after making provision for undisputed payments)

provided that the boiler and machinery insurer shall simultaneously pay to the insured the remaining one-half of that portion of the total recoverable loss or damage which is in disagreement.

Such payment by the company and the acceptance of same by the insured signifies the agreement of the company to submit to and proceed with arbitration within ninety days of such payment in order to apportion the amount of total recoverable loss or damage which is in disagreement. The arbitrators shall be three in number, one of whom shall be appointed by this company, one of whom shall be appointed by the boiler and machinery

insurer, and the third appointed by consent of the other two. The decision by the arbitrators shall be binding on the parties.

The insured agrees to cooperate in furnishing information and technical data as may be required by us in connection with such arbitration or other method of apportionment upon which the insurers may decide, but not to intervene therein.

---

PREMIUM ADJUSTMENT

NONE – CHANGES CONTEMPLATED IN POLICY PREMIUM

---

CP 12 01 11 85    Copyright , ISO Commercial Risk Services, Inc., 1983

Policy Change Number___8____

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

COMMERCIAL OUTPUT PROGRAM
POLICY CHANGES

THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBERED BELOW:

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |

CHANGES

Changes to Commercial Output Program – Property Coverage Part, COP-100 Ed2.0

**Mold Exclusion, With Limited Coverage Provision**

THESE ARE IMPORTANT CHANGES TO POLICY TERMS AND CONDITIONS --
PLEASE READ CAREFULLY

1. PERILS EXCLUDED, page 10, item 1.h is added as follows:

   **h. "Fungus", Wet Rot, Dry Rot And Bacteria**

   Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

   But if "fungus", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

   This exclusion does not apply:

   1. When "fungus", wet or dry rot or bacteria results from fire or lightning; or
   2. To the extent that coverage is provided in the ADDITIONAL COVERAGE - Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

2. PERILS EXCLUDED, page 11, item 2.c is amended by deleting the words "fungus", "mildew" and "mold" from the first paragraph, and deleting the second paragraph completely.

3. PERILS EXCLUDED, page 12, item 2.n is amended as follows: ""We" do not pay for loss caused by continuous or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more."

4. PERILS EXCLUDED, page 13, item 2.q is amended by changing the first sentence as follows: ""We" do not pay for loss to personal property caused by humidity or changes in or extremes of temperature, except if covered under ADDITIONAL COVERAGE 6, Limited Coverage for "Fungus", Wet Rot, Dry Rot and Bacteria."

5. DEFINITIONS, page 2, item 17 is added as follows: ""Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi."

6. ADDITIONAL COVERAGES, page 2, item 6 is added as follows:

### 6. Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria

1.The coverage described in 6.2. and 6.6. only applies when the "fungus", wet or dry rot or bacteria is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

a. A "specified cause of loss" other than fire or lightning; or

b. Flood, if the Flood Coverage Endorsement applies to the affected premises.

2. We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

a. Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

b. The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

3.The coverage described under 6.2. of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

4. The coverage provided under this Limited Coverage does not increase the applicable limit of insurance on any covered property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable limit of insurance on the affected covered property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5. The terms of this Limited Coverage do not increase or reduce the coverage provided under OTHER COVERAGES 1. Collapse, or 2. Tearing Out and Replacing.

6. The following, 6.a. or 6.b., applies only if Business Income and/or Extra Expense coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense coverage form.

a.  If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense i s l imited t o t he a mount o f l oss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

b.  If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry· rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

---

PREMIUM ADJUSTMENT

NONE – CHANGES CONTEMPLATED IN POLICY PREMIUM

---

# MASSACHUSETTS
# TENANT RELOCATION EXPENSE

This endorsement is required by Massachusetts law.

This policy provides relocation expense benefits as follows:

1. Relocation Expense

   When a rented living quarters in a building covered by this policy is made uninhabitable as a result of a loss by fire, this policy covers relocation expense incurred by the tenant or lawful occupant to relocate to other living quarters in the shortest possible time.

2. Definitions

   A. "Relocation expense" means documented, reasonable and necessary:

      (1) Costs of packing, insuring, storing and carting household goods;

      (2) Costs of securing new utility services less refunds from discontinued services at the damaged premises;

      (3) Costs of searching for other quarters;

      (4) Costs of disconnecting and reconnecting household appliances;

      (5) Additional living expenses while searching for or awaiting possession of other quarters or the restoration of existing quarters;

      commencing with the date of damage to the covered building and not limited by the expiration date of this policy.

      "Relocation expense" does not mean:

      (1) Loss caused by the termination of a lease or other agreement;

      (2) Security deposits or other payments made to the landlord or lessor of other quarters;

      (3) Down payments, legal fees and closing costs incidental to the purchase of other quarters.

   B. "Rented Living Quarters" means a room, suite of rooms or apartment rented as a single residential unit by one or more persons.

      "Rented Living Quarters" does not mean one or more rooms occupied by one or more persons as roomers in a hotel, motel, public or private lodging or rooming house where the premises are occupied on a transient basis.

3. Limit of Liability

   The liability for relocation expense under this policy is limited to not more than $750 for a rented living quarters.

4. No Deductible

   The deductible provisions of this policy do not apply to the relocation expense benefits.

5. Other Insurance

   A. If at the time of loss, the tenant or lawful occupant has other insurance that covers relocation expense, we shall not be liable for any loss under this coverage until the liability of such other insurance has been exhausted.

   B. If you have other insurance that covers relocation expense, payment under this policy will be prorated with such insurance for the smaller of the incurred relocation expense or $750 all after application of the other insurance of the tenant or lawful occupant.

6. Loss Settlement

   The claims for all persons occupying the rented living quarters will be settled with and payment made to the tenant or lawful occupant renting the quarters from the building owners, or lessor.

All other provisions of this policy remain unchanged.

Copyright, Insurance Services Office, Inc., 1985
Copyright, ISO Commercial Risk Services, Inc., 1985

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

A. We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

   1. The failure, malfunction or inadequacy of:

      a. Any of the following, whether belonging to any insured or to others:

         (1) Computer hardware, including microprocessors;

         (2) Computer application software;

         (3) Computer operating systems and related software;

         (4) Computer networks;

         (5) Microprocessors (computer chips) not part of any computer system; or

         (6) Any other computerized or electronic equipment or components; or

      b. Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph A.1.a. of this endorsement;

due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph A.1. of this endorsement.

B. If an excluded Cause of Loss as described in Paragraph A. of this endorsement results:

   1. In a Covered Cause of Loss under the Boiler And Machinery Coverage Part, the Commercial Crime Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

   2. Under the Commercial Property Coverage Part:

      a. In a "Specified Cause of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

      b. In a Covered Cause of Loss under the Causes Of Loss – Basic Form or the Causes Of Loss – Broad Form;

we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

C. We will not pay for repair, replacement or modification of any items in Paragraphs A.1.a. and A.1.b. of this endorsement to correct any deficiencies or change any features.

 © ISO Properties, Inc., 2000

AAIS
COP-100  Ed 2.0
Page 1 of 21

# COMMERCIAL OUTPUT PROGRAM -- PROPERTY COVERAGE PART

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Commercial Output Program. This coverage is also subject to the "declarations" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "declarations".

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

## DEFINITIONS

1.  The words "you" and "your" mean the persons or organizations named as the insured on the "declarations".

2.  The words "we", "us", and "our" mean the company providing this coverage.

3.  "Computers" means:

    a.  "hardware" owned by "you" or in "your" care, custody, or control; or

    b.  "software".

4.  "Covered locations" means any location or premises where "you" have buildings, structures, or business personal property covered under this coverage.

5.  "Declarations" means all pages labeled Declarations, Supplemental Declarations, or Schedules, which pertain to this coverage.

6.  "Fine arts" means paintings, etchings, pictures, tapestries, art glass windows, and other bona fide works of art of rarity, historical value, or artistic merit.

7.  "Hardware" means a network of electronic machine components capable of accepting instructions and information, processing the information according to the instructions, and producing desired results.

8.  "Limit" means the amount of coverage that applies.

9.  "Mobile equipment" means:

    a.  contractors' equipment or similar equipment of a mobile or floating nature;

    b.  self-propelled vehicles designed and used primarily to carry mounted equipment; or

    c.  vehicles designed for highway use that are unlicensed and not operated on public roads.

10. "Pollutant" means:

    a.  any solid, liquid, gaseous or thermal irritant, or contaminant;

    b.  electromagnetic (visible or invisible) or sound emission; or

    c.  waste, including materials to be disposed of as well as recycled, reclaimed, or reconditioned.

11. "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

12. "Software" means:

    a. processing, recording, or storage media used for electronic data processing operations. This includes films, tapes, cards, discs, drums, cartridges, or cells.

    b. data, including instructions or information, stored on processing, recording, or storage media used for electronic data processing operations.

13. "Specified perils" means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; and windstorm.

    Falling objects does not include loss to business personal property in the open, to the interior of buildings or structures, or business personal property inside buildings or structures unless the exterior of the roof or walls are first damaged by a falling object.

    Water damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

14. "Terms" are all provisions, limitations, exclusions, conditions, and definitions that apply.

15. "Valuable papers and records" means inscribed, printed, or written documents; manuscripts; or records. This includes abstracts, books, deeds, drawings, films, maps, or mortgages.

16. "Volcanic action" means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow. It does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss to the covered property.

## PROPERTY COVERED

"We" cover direct physical loss to covered property at "covered locations" caused by a covered peril. "We" cover the following types of property.

BUILDING PROPERTY

This means buildings and structures including:

1. completed additions;

2. fixtures, machinery, and equipment which are a permanent part of a covered building or structure;

3. outdoor fixtures;

4. personal property owned by "you" and used to maintain or service a covered building or structure or its premises. This includes air-conditioning equipment; fire extinguishing apparatus; floor coverings; and appliances for refrigerating, cooking, dish washing, and laundering;

5. if not covered by other insurance:

    a. buildings and additions to buildings under construction, alteration, and repair;

b.  materials, equipment, supplies, and temporary structures, on or within 1,000 feet of "covered locations", used for the construction, alteration, and repair of buildings or additions to buildings;

6.  building glass;

7.  the following property if it is located on or within 1,000 feet of a covered building or structure:

   a.  radio and television towers, antennas, satellite dishes, masts, lead-in wiring, and guy wires. This includes foundations and any other property that is permanently attached to any of these types of property;

   b.  awnings or canopies; and

   c.  fences.

8.  signs, whether or not they are attached to covered buildings, or structures.

BUSINESS PERSONAL PROPERTY

This means "your" business personal property in buildings or structures at "covered locations" or in the open (or in vehicles) on or within 1,000 feet of "covered locations". This includes:

1.  "your" use interest as a tenant in improvements to the buildings or structures. Improvements are fixtures, alterations, installations, or additions:

   a.  to a building or structure "you" occupy but do not own; and

   b.  made or acquired at "your" expense and which cannot be legally removed by "you".

2.  leased personal property which "you" have a contractual responsibility to insure.

3.  "your" interest in personal property of others to the extent of "your" labor, material, and services.

4.  "computers", if not covered by other insurance.

5.  personal property which will become a part of "your" installation, fabrication, or erection project while:

   a.  at the site of installation, fabrication, or erection; or

   b.  while in temporary storage awaiting installation, fabrication, or erection.

   Coverage under this provision is not restricted to buildings or structures at "covered locations" or within 1,000 feet of "covered locations".

6.  "mobile equipment", if not covered by other insurance. Coverage under this provision is not restricted to buildings or structures at "covered locations" or within 1,000 feet of "covered locations".

7.  personal property of others. This means personal property of others that is in "your" care, custody, or control.

   Personal property of others includes property that is sold under an installation agreement where "your" responsibility continues until the property is accepted by the buyer.

   "Our" payment for loss to personal property of others will only be for the benefit of the owners of the personal property.

AAIS
COP-100  Ed 2.0
Page 4 of 21

# PROPERTY NOT COVERED

1. **Airborne or Waterborne Property --** "We" do not cover airborne or waterborne personal property unless the property is being transported by regularly scheduled airlines or ferry service.

2. **Aircraft or Watercraft --** "We" do not cover aircraft or watercraft (including their motors, equipment, and accessories) that are operated principally away from "covered locations". However, "we" do cover:

    a. aircraft or watercraft (including their motors, equipment, and accessories) that "you" manufacture, process, warehouse, or hold for sale; and

    b. rowboats or canoes out of water at "covered locations".

3. **Animals --** "We" do not cover animals, including birds and fish, unless owned by others and boarded by "you". "We" do cover animals "you" own and hold for sale.

4. **Automobiles and Vehicles --** "We" do not cover automobiles, motor trucks, tractors, trailers, and similar conveyances designed and used for over-the-road transportation of people or cargo.

    "We" do cover:

    a. "mobile equipment" described as Business Personal Property; and

    b. automobiles and vehicles that "you" manufacture, process, or warehouse. However, "we" do not cover automobiles or vehicles held for sale.

5. **Contraband --** "We" do not cover contraband or property in the course of illegal transportation or trade.

6. **Crops --** "We" do not cover grain, hay, straw, or other crops when outdoors.

7. **Exports and Imports --** "We" do not cover exported or imported property that is covered under any ocean marine cargo insurance policy or any similar policy that anyone has obtained covering exports and imports.

8. **Land, Water, or Cost of Excavation --** "We" do not cover:

    a. land, including land on which the covered property is located;

    b. underground or surface water; or

    c. cost of excavations, grading, or filling.

9. **Money and Securities --** "We" do not cover accounts, bills, currency, food stamps, or other evidences of debt, lottery tickets not held for sale, money, notes, or securities.

10. **Property More Specifically Insured --** "We" do not cover property which is more specifically insured in whole or in part by any other insurance. "We" do cover the amount in excess of the amount due from the more specific insurance.

11. **Property of Others --** "We" do not cover property of others for which "you" are responsible as:

    a. a carrier for hire; or

    b. an arranger of transportation. This includes carloaders, consolidators, brokers, freight forwarders, or shipping associations.

12. **Property You Have Sold --** "We" do not cover property that "you" have sold after it has been delivered. This does not include property which "you" have sold under an installation agreement.

AAIS
COP-100  Ed 2.0
Page 5 of 21

## ADDITIONAL COVERAGES

1. **Debris Removal** – "We" pay the cost to remove the debris of covered property that is caused by a covered peril. This coverage does not include costs to:

   a. extract "pollutants" from land or water; or.

   b. remove, restore, or replace polluted land or water.

   "We" will not pay any more under this coverage than 25% of the amount "we" pay for the direct loss. "We" will not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

   However, "we" pay an additional amount of debris removal expense up to $5,000 when the debris removal expense exceeds 25% of the amount "we" pay for direct loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

   "We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

2. **Emergency Removal** – "We" pay for loss to covered property while it is moved or being moved to prevent a loss caused by a covered peril. "We" will pay for any direct physical loss caused by a peril that is not excluded. This coverage applies for up to ten days after the property is first moved, but does not extend past the date on which this policy expires.

3. **Fire Department Service Charges** – "We" pay up to $5,000 to cover "your" liability, assumed by contract or agreement prior to the loss, for fire department service charges.

   This coverage is limited to charges incurred when the fire department is called to save or protect covered property from a covered peril.

   No deductible applies.

4. **Pollutant Cleanup and Removal** – "We" pay "your" expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period. The expenses are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs.

   "We" do not pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants". However, "we" pay the cost of testing which is necessary for the extraction of "pollutants" from land or water.

   The most "we" pay for each site or location is $25,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12 month period of this policy.

5. **Recharge of Fire Protection Equipment** – "We" pay up to $10,000 to cover "your" incurred expenses to recharge automatic fire protection equipment when the equipment is discharged to fight a fire or as a result of a covered peril.

NARS

DEC 1 1 2001

AAIS
COP-100 Ed 2.0
Page 6 of 21

## SUPPLEMENTAL COVERAGES

'We' provide the following supplemental coverages and unless otherwise stated, each supplemental coverage:

    a.  applies to loss caused by a covered peril;

    b.  applies to covered property in or on buildings or structures at 'covered locations' or in the open (or in vehicles) within 1,000 feet of the 'covered locations'; and

    .c.  is not subject to and not considered in applying coinsurance when coinsurance conditions are added to this coverage.

1. **Arson Reward** -- 'We' pay up to $5,000 as reward for information that leads to an arson conviction. The conviction must be for a covered fire loss. The amount 'we' pay is not increased by the number of persons involved in providing the information.

2. **Brands or Labels Expense** -- If covered business personal property is damaged, 'we' have the option to take all or any part of the damaged business personal property at the agreed or appraised value. 'You' may stamp salvage or remove any brands or labels from the property or its containers. 'You' must not damage the property or containers when 'you' remove the brands or labels. 'You' must relabel the merchandise or its containers if required by law.

    'We' pay up to $50,000 for 'your' expenses for stamping or removing brands or labels.

3. **Consequential Loss** -- 'We' pay up to $10,000 for the consequential loss of undamaged business personal property. Consequential loss means the loss of value of an undamaged part or parts of a product which becomes unmarketable. It must be unmarketable due to a physical loss to another part or parts of the product caused by a covered peril.

4. **Foundations of Buildings; Pilings, and Underground Pipes** -- 'We' pay up to $250,000 or 10% of the 'limit' shown on the 'declarations' for covered property at any one 'covered location', whichever is less for loss to:

    a.  foundations of buildings, structures, machinery, or boilers if their foundations are below:

        1) the lowest basement floor; or
        2) the surface of the ground, if there is no basement;

    b.  pilings, piers, wharves, docks, or retaining walls;

    c.  underground pipes, flues, or drains.

5. **Inventory and Appraisals Expenses** -- 'We' pay up to $50,000 for reasonable expenses, for the taking of inventory and appraisals, incurred by 'you' at 'our' request to assist 'us' in the determination of the amount of a covered loss.

    'We' do not pay for:

    a.  any expenses incurred under the Other Conditions, Appraisal section of this coverage; or

    b.  any public adjusters' fees.

NARS
DEC 1 1 2001

AAIS
COP-100  Ed 2.0
Page 7 of 21

6. Newly Acquired Buildings -- When the Locations and Scheduled Locations Endorsements are attached to this coverage, 'we' cover 'your' buildings or structures being built or that 'you' acquire during the policy period.

This coverage applies for 90 days from the date 'you' acquire or begin to construct the building or structure or until 'you' report the newly acquired property to 'us', whichever occurs first. This coverage does not go beyond the end of the policy period.

'You' must pay additional premium due from the date construction is started or 'you' acquire the property.

'We' pay up to $500,000 for loss to each building or structure in any one occurrence.

7. Ordinance or Law -- When a covered peril occurs to covered buildings or structures, 'we' cover:

a. loss caused by the enforcement of any ordinance, law, or decree that:

   1) requires the demolition of undamaged parts of covered buildings or structures that are damaged or destroyed by a covered peril;

   2) regulates the construction or repair of buildings or structures, or establishes building, zoning, or land use requirements at 'covered locations'; and

   3) is in force at the time of loss.

b. the increased cost to repair, rebuild, or construct covered buildings or structures as a result of the enforcement of building, zoning or land use ordinance, law; or decree. If covered buildings or structures are repaired or rebuilt, they must be intended for similar occupancy

as the current property, unless otherwise required by building, zoning or land use ordinance, law, or decree.

c. the cost to demolish and clear the site of undamaged parts of covered buildings or structures that are damaged or destroyed by a covered peril as a result of the enforcement of the building, zoning or land use ordinance, law, or decree.

'We' do not cover the costs associated with the enforcement of any ordinance, law, or decree that requires 'you' or anyone else to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effects of 'pollutants'.

'We' do not cover the increased cost of construction until the covered building or structure is actually repaired or replaced and unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

If the covered building or structure is repaired or replaced, 'we' pay the lesser of:

a. the amount 'you' actually spend to demolish and clear the site, plus the amount 'you' actually spend to repair, rebuild, or construct the property but not for more than buildings or structures of the same height, floor area, and style; or

b. $50,000.

If the covered building or structure is not repaired or replaced, 'we' pay the lesser of:

a. the amount 'you' actually spend to demolish and clear the site, plus the cost to replace the damaged or destroyed property with other property:

NARS
DEC 1 1 2001

AAIS
COP-100 Ed 2.0
Page 8 of 21

1) of like kind, and quality;
2) of the same height, floor area, and style; and
3) used for the same purpose; or

b. $50,000.

8. **Personal Effects** – "We" pay up to $10,000 at each "covered location" for personal effects owned by "you", "your" officers, "your" partners, or "your" employees.

9. **Personal Property - Acquired Locations** – When the Locations and Scheduled Locations Endorsements are attached to this coverage, "we" cover "your" business personal property at locations that "you" acquire during the policy period. "We" do not cover personal property at fairs or exhibitions except as provided under Property On Exhibition.

This coverage applies for 90 days from the date "you" acquire the location or until "you" report the acquired location to "us" whichever occurs first. This coverage does not go beyond the end of the policy period.

"You" must pay any additional premium due from the date "you" acquire the location.

"We" pay up to $250,000 for loss to business personal property at acquired locations in any one occurrence.

10. **Trees, Shrubs, and Plants** – "We" pay up to $50,000 including debris removal expenses, for "your" outdoor trees, shrubs, plants, and lawns except for those held for sale. "We" only cover loss caused by:

a. fire;

b. lightning;

c. explosion;

d. riot or civil commotion; or

e. falling objects.

## SUPPLEMENTAL MARINE COVERAGES

"We" provide the following Supplemental Marine Coverages and unless otherwise stated, each supplemental marine coverage:

a. applies to loss caused by a covered peril; and

b. is not subject to and not considered in applying coinsurance when coinsurance conditions are added to this coverage.

1. **Accounts Receivable** – "We" pay up to $50,000 to cover losses and expenses that "you" incur as a result of loss or damage to "your" records of accounts receivable.

Losses and expenses under this coverage means:

a. all sums due "you" from customers, provided "you" are unable to effect collection;

b. interest charges on any loan used to offset impaired collections pending prepayment of such sums made uncollectible by loss or damage;

c. collection expenses in excess of normal collection costs made necessary because of loss or damage;

d. other reasonable expenses incurred by "you" in recreating records of accounts receivable following such loss or damage.

2. **Fine Arts** – "We" pay up to $50,000 for "your" "fine arts" at "covered locations".

NARS
DEC 1 1 2001

AAIS
COP-100 Ed 2.0
Page 9 of 21

3. Property on Exhibition -- "We" pay up to $50,000 for covered business personal property while temporarily on display or exhibit at locations "you" do not regularly occupy.

4. Property In Transit -- "We" pay up to $50,000 in any one occurrence for covered business personal property (other than property in the care, custody, or control of "your" sales representatives) while in transit, regardless if the loss involves one or more vehicles, conveyances, containers, trailers, or any combination of these.

5. Sales Representative Samples -- "We" pay up to $50,000 for samples of "your" stock in trade (including containers) and similar property of others.

"We" cover samples of "your" stock in trade while the property is:

a. in the custody of "your" sales representatives and agents;

b. in "your" custody while acting as a sales representative; or

c. in transit between "your" "covered locations" and "your" sales representatives.

6. Valuable Papers and Records - Cost of Research -- "We" pay up to $50,000 for the cost of research or other expenses necessary to reproduce, replace, or restore lost information on lost or damaged "valuable papers and records". This includes those "valuable papers and records" which exist on electronic or magnetic media for which duplicates do not exist.

## PERILS COVERED

"We" cover external risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

1. "We" do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

   a. Ordinance or Law -- Except as provided under Supplemental Coverages, "we" do not pay for loss or increased cost caused by enforcement of any code, ordinance, or law regulating the use, construction, or repair of any building or structure; or requiring the demolition of any building or structure including the cost of removing its debris.

   b. Earth Movement or Volcanic Eruption -- "We" do not pay for loss caused by any earth movement (other than "sinkhole collapse") or caused by eruption, explosion, or effusion of a volcano. Earth movement includes, but is not limited to: earthquake; landslide; mudflow; mudslide; mine subsidence; or sinking, rising, or shifting of earth.

AAIS
COP-100 Ed 2.0
Page 10 of 21

"We' do cover direct loss by fire, explosion, or 'volcanic action' resulting from either earth movement or eruption, explosion, or effusion of a volcano.

All volcanic eruptions that occur within a 168 hour period shall be considered a single loss.

This exclusion does not apply to 'computers', 'mobile equipment', and the Supplemental Marine Coverages.

c. Civil Authority -- "We', do not pay for loss: caused. by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

"We' do cover loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

d. Nuclear Hazard -- "We' do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled); whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. Direct loss by fire resulting from the nuclear hazard is covered.

e. Utility Failure -- "We' do not pay for loss caused by interruption of power or other utility services resulting from any cause if the interruption takes place away from the 'covered locations'. Interruption includes reduced or increased voltage, low or high pressure, or other interruptions of normal services.

"We' do cover the direct loss by a covered peril which occurs at 'covered locations' as a result of any power interruption.

This exclusion does not apply to 'computers', 'mobile equipment', and the Supplemental Marine Coverages.

f. War -- "We' do not pay for loss caused by war. This means:

1) declared war, undeclared war, civil war, insurrection, rebellion, or revolution;

2) a warlike act by a military force or by military personnel;

3) the destruction, seizure, or use of the property for a military purpose; or

4) the discharge of a nuclear weapon even if it is accidental.

g. Water -- "We' do not pay for loss caused by water. This means:

1) flood, surface water, waves, tidal water, or the overflow of a body of water, all whether driven by wind or not. This includes spray that results from these whether driven by wind or not;

2) water that backs up through a committed sewer or drain; and

3) water below the surface of the ground. This includes water that exerts pressure on or flows, seeps, or leaks through or into a building or structure, sidewalk, driveway, foundation, swimming pool, or other structure.

If fire, explosion, or sprinkler leakage results, 'we' do cover the resulting loss.

This exclusion does not apply to 'computers', 'mobile equipment', and the Supplemental Marine Coverages.

NARS

DEC 1 1 2001

AAIS
COF-100  Ed 2.0
Page 11 of 21

2.  "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss.

    a.  **Animals** -- "We" do not pay for loss caused by animals, including birds, insects, or vermin. "Wo" do cover any resulting loss caused by a "specified peril" or breakage of building glass.

    b.  **Collapse** -- "We" do not pay for loss caused by collapse, except as provided under the Other Coverages, Collapse. If loss caused by a covered peril results at the "covered locations" "we" will pay for that resulting loss.

        This exclusion does not apply to "computers", "mobile equipment", and the Supplemental Marine Coverages.

    c.  **Contamination or Deterioration** -- "We" do not pay for loss caused by contamination or deterioration including corrosion, decay, fungus, mildew, mold, rot, rust, or any quality, fault, or weakness in covered property that causes it to damage or destroy itself. "We" do cover any resulting loss caused by a "specified peril" or breakage of building glass.

        However, "we" do cover loss caused by corrosion, decay, fungus, mildew, mold, rot, or rust to "computers" that results from direct physical damage by a covered peril to the air conditioning system that services "your" "computers".

    d.  **Criminal, Fraudulent, or Dishonest Acts** -- "We" do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts alone or in collusion with another by:

        1) "you";
        2) others who have an interest in the property;

    3) others to whom "you" entrust the property;
    4) "your" partners, officers, directors, trustees, joint adventurers; or
    5) the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

    This exclusion does not apply to acts of destruction by "your" employees, but "we" do not pay for theft by employees.

    This exclusion does not apply to covered property in the custody of a carrier for hire.

    e.  **Defects, Errors, and Omissions** -- "We" do not pay for loss which results from one or more of the following:

        1) an act, error, or omission (negligent or not) relating to:

            a) land use;
            b) the design, specification, construction, workmanship, installation, or maintenance of property;
            c) planning, zoning, development, siting, surveying, grading, or compaction; or
            d) maintenance of property (including land, structures, or improvements);

            whether on or off the "covered locations";

        2) a defect, weakness, inadequacy, fault, or unsoundness in materials used in construction or repair, whether on or off the "covered locations";
        3) the cost to make good an error in design; or
        4) a data processing error or omission in programming or giving improper instructions.

**NARS**

**DEC 1 1 2001**

AAIS
COP-100 Ed 2.0
Page 12 of 21

In addition, 'we' do not pay for loss to business personal property caused by deficiencies or defects in design, specifications, materials, or workmanship, or caused by latent or inherent defects.

'We' do cover any resulting loss caused by a covered peril unless the resulting loss itself is excluded.

f. Electrical Currents -- 'We' do not pay for loss caused by arcing or by electrical currents other than lightning. If a fire results, 'we' cover only the loss caused by fire.

'We' do cover the direct loss by a covered peril which occurs at 'covered locations' as a result of any power interruption or other utility services.

g. Explosion -- 'We' do not pay for loss caused by explosion of steam boilers, steam pipes, steam turbines, or steam engines that 'you' own or lease or that are operated under 'your' control. If a fire or combustion explosion results, 'we' do cover the resulting loss. 'We' also cover loss caused by the explosion of gas or fuel in a firebox, combustion chamber, or flue.

h. Freezing -- 'We' do not pay for loss caused by water; other liquids; powder; or molten material that leaks or flows from plumbing, heating, air-conditioning systems, or appliances other than fire protective systems caused by freezing. This does not apply if 'you' use reasonable care to maintain heat in the building or structure; or 'you' drain the equipment and turn off the supply if the heat is not maintained.

i. Increased Hazard -- 'We' do not pay for loss occurring while the hazard has been materially increased by any means within 'your' knowledge or 'your' control.

j. Loss of Use -- 'We' do not pay for loss caused by loss of use, business interruption, delay, or loss of market.

k. Mechanical Breakdown -- 'We' do not pay for loss caused by mechanical breakdown or rupturing or bursting of moving parts of machinery caused by centrifugal force. 'We' do cover any resulting loss caused by a 'specified peril', breakage of building glass, or elevator collision.

This exclusion does not apply to 'computers'.

l. Neglect -- 'We' do not pay for loss caused by 'your' neglect to use all reasonable means to save covered property at and after the time of loss.

'We' do not pay for loss caused by 'your' neglect to use all reasonable means to save and preserve covered property when endangered by a covered peril.

m. Pollutants -- 'We' do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of 'pollutants' unless the release, discharge, seepage, migration, dispersal, or escape is caused by a 'specified peril'. 'We' do pay for any resulting loss caused by a 'specified peril'.

n. Seepage -- 'We' do not pay for loss caused by continuous or repeated seepage or leakage of water or steam that occurs over a period of 14 days or more.

NARS
DEC 1 1 2001

c. Settling, Cracking, Shrinking, Bulging, or Expanding -- 'We' do not pay for loss caused by settling, cracking, shrinking, bulging, or expanding of pavements, footings, foundations, walls, ceilings, or roofs. 'We' do cover any resulting loss caused by a 'specified peril' or breakage of building glass.

This exclusion does not apply to 'computers' and 'mobile' equipment'.

p. Smog, Smoke, Vapor, or Gas -- 'We' do not pay for 'loss caused by smog, smoke, vapor, or gas from agricultural smudging or industrial operations.

This exclusion does not apply to 'computers' and 'mobile equipment'.

q. Temperature/Humidity -- 'We' do not pay for loss to personal property caused by humidity or changes in or extremes of temperature. 'We' will cover any resulting loss caused by 'specified perils' or breakage of building glass.

However, 'we' do pay for loss to 'computers' that results from direct physical damage by a covered peril to the air conditioning system that services 'your' 'computers'.

r. Voluntary Parting -- 'We' do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

s. Wear and Tear -- 'We' do not pay for loss caused by wear and tear, marring, or scratching.

'We' do pay for any resulting loss caused by a 'specified peril' or breakage of building glass.

t. Weather -- 'We' do not pay for loss caused by weather conditions if the weather conditions contribute in any way with a cause or event excluded in paragraph 1. above.

'We' do pay for any resulting loss caused by a covered peril unless the resulting loss itself is excluded.

## ADDITIONAL PROPERTY NOT COVERED OR SUBJECT TO LIMITATIONS

1. Accounts Receivable -- 'We' do not cover loss to accounts receivables that is a result of:

   a. an error or omission in bookkeeping, accounting, or billing;

   b. 'your' discovery of a discrepancy in 'your' books or records if an audit or inventory computation is necessary to prove the factual existence of the discrepancy.

2. Animals -- 'We' do not cover loss to animals, including birds and fish, except death or destruction of animals held for sale caused by 'specified perils' or breakage of building glass.

3. Boilers -- 'We' do not cover loss to steam boilers, steam pipes, steam turbines, or steam engines caused by any condition or occurrence within such equipment. 'We' do cover loss to such equipment caused by the explosion of gas or fuel in a firebox, combustion chamber, or flue.

   'We' do not cover loss to hot water boilers or heaters caused by any condition or occurrence within such equipment other than explosion. This exclusion includes bursting, cracking, or rupturing.

4. Furs -- 'We' do not cover furs or fur garments for loss by theft for more than $10,000 total in any one occurrence. 4/ 2,500

5. Glassware/Fragile Articles -- 'We' do not cover breakage of fragile articles such as glassware, statuary, porcelains and bric-a-brac, except as a result of 'specified perils' or breakage of building glass. This does not apply to glass that is a part of a building or structure, bottles or other containers held for sale, or lenses of photographic and scientific instruments.

6. Gutters and Downspouts -- 'We' do not cover loss to gutters and downspouts caused by the weight of ice, sleet, or snow.

7. Interior of Buildings -- 'We' do not cover loss to the interior of buildings or structures or to personal property in the buildings or structures caused by rain, snow, sleet, ice, sand, or dust, unless:

   a. entering through openings made by a 'specified peril'; or

   b. the loss is caused by the thawing of snow, sleet, or ice on the building or structure.

8. Jewelry, Watches, Jewels, Pearls, A-250 Precious Stones, and Metals -- 'We' do not cover more than $10,000 total in any one occurrence for loss by theft of jewelry; watches; watch movements; jewels; pearls; precious or semi-precious stones; gold, silver, or other precious metals; or items consisting primarily of precious metals. This limitation does not apply to items of jewelry or watches worth $100 or less.

9. Missing Property -- 'We' do not cover missing property when the only proof of loss is unexplained or mysterious disappearance, or shortage discovered on taking inventory, or other instance where there is no physical evidence to show what happened to the property.

This exclusion does not apply to property in the custody of carriers for hire.

10. Personal Property In the Open -- 'We' do not cover loss to personal property in the open caused by rain, snow, ice, or sleet.

   This exclusion does not apply to 'mobile equipment' or to property in the custody of carriers for hire.

11. Stamps, Tickets, and/or Letters of Credit -- 'We' do not cover more than $5,000 total in any one occurrence for loss to stamps, tickets (including lottery tickets held for sale), or letters of credit by theft.

12. Transferred Property -- 'We' do not cover loss to property that has been transferred to a person or to a place away from the 'covered locations' on the basis of unauthorized instructions.

13. Valuable Papers and Records -- 'We' do not cover loss to 'valuable papers and records' caused by errors or omissions in processing or copying except as a result of 'specified perils' or breakage of building glass.

## OTHER COVERAGES

1. Collapse -- 'We' pay for loss caused by direct physical loss involving collapse of a covered building or structure or any part of a building or structure caused only by one or more of the following:

   a. 'specified perils'; all only as covered in Commercial Output Program Coverages;

   b. hidden decay;

   c. hidden insect or vermin damage;

NARS
DEC 1 1 2001

d. weight of people or business personal property;

e. weight of rain that collects on a roof; or

f. the use of defective material or methods in construction, remodeling, or renovation if the collapse occurs during the course of the construction, remodeling, or renovation.

"We" do not pay for loss to the following types of property, if otherwise covered under Commercial Output Program Coverage, under items a. through f. above, unless the loss is a direct result of the collapse of a building or structure:

outdoor awnings or canopies or their supports; fences; gutters and downspouts; yard fixtures; outdoor swimming pools; piers, wharves, and docks; beach or diving platforms or appurtenances; retaining walls; foundations; walks, roadways, and other paved surfaces.

2. Tearing Out and Replacing -- When "we" cover buildings or structures and a loss caused by:

a. water;

b. other liquids;

c. powder; or

d. molten material

is covered, "we" also pay the cost of tearing out and replacing any part of the covered building or structure to repair damage to the system or appliance from which the water or other substance escapes.

"We" do not pay for damage to the system or appliance from which the water or other substance escapes. However, "we" pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage results in discharge of any substance from an automatic fire protection system; or is directly caused by freezing.

## WHAT MUST BE DONE IN CASE OF LOSS

1. Notice -- In case of a loss, "you" must:

a. give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice);

b. give notice to the police when the act that causes the loss is a crime; and

c. give notice to the credit card company if the loss involves a credit card.

2. Protect Property -- "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss. "We" will pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. "You" must keep an accurate record of such costs. However "we" will not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against. This does not increase "our" "limit".

HARS
DEC 1 1 2001

3. Proof of Loss – 'You' must send 'us',
within 60 days after 'our' request, a signed,
sworn proof of loss. This must include the
following information:

   a.  the time, place, and circumstances of
the loss;

   b.  other policies of insurance that may
cover the loss;

   c.  'your' interest and the interests of all
others in the property involved,
including all mortgages and liens;

   d.  changes in title or occupancy of the
covered property during the policy
period;

   e.  detailed estimates for repair or
replacement of covered property;

   f.  an inventory of damaged and
undamaged covered property showing
in detail the quantity, description, cost,
actual cash value, and amount of the
loss. 'You' must attach to the inventory
copies of all bills, receipts, and related
documents that substantiate the
inventory.

4. Examination – 'You' must submit to
examination under oath in matters
connected with the loss as often as 'we'
reasonably request and give 'us' sworn
statements of the answers. If more than
one person is examined, 'we' have the
right to examine and receive statements
separately and not in the presence of
others.

5. Records – 'You' must produce records,
including tax returns and bank microfilms of
all cancelled checks relating to value, loss,
and expense and permit copies and
extracts to be made of them as often as
'we' reasonably request.

6. Damaged Property – 'You' must exhibit
the damaged and undamaged property as
often as 'we' reasonably request and allow
'us' to inspect or take samples of the
property.

7. Volunteer Payments – 'You' must not,
except at 'your' own expense, voluntarily
make any payments, assume any
obligations, pay or offer any rewards, or
incur any other expenses except as
respects protecting property from further
damage.

8. Abandonment — 'You' may not abandon
the property to 'us' without 'our' written
consent.

9. Cooperation – 'You' must cooperate with
'us' in performing all acts required by the
Commercial Output Program Coverages.

## VALUATION

1. Actual Cash Value – When replacement
cost is not shown on the 'declarations' for
covered property, the value of covered
property will be based on the actual cash
value at the time of the loss (with a
deduction for depreciation) except as
provided in paragraphs 3. through 9.
below.

2. Replacement Cost – When replacement
cost is shown on the 'declarations' for
covered property, the value of covered
property will be based on the replacement
cost without any deduction for
depreciation.

   The replacement cost is limited to the cost
of repair or replacement with similar
materials on the same site and used for the
same purpose. The payment shall not
exceed the amount 'you' spend to repair or
replace the damaged or destroyed
property.

NARS
DEC 1 1 2001

Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced. "You" may make a claim for actual cash value before repair or replacement takes place, and later for the replacement cost if "you" notify "us" of "your" intent within 180 days after the loss.

This replacement cost provision does not apply to paragraphs 3. through 9. below.

3. **Fine Arts** -- The value of "fine arts" will be based on actual cash value at the time of loss (without a deduction for depreciation).

4. **Glass** -- The value of glass will be based on the cost of safety glazing material where required by code, ordinance, or law.

5. **Merchandise Sold** -- The value of merchandise that "you" have sold but not delivered will be based on the selling price less all discounts and unincurred expenses.

6. **Pair or Set** -- The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

7. **Loss to Parts** -- The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

8. **Tenant's Improvements** -- The value of tenant's improvements losses will be based on the actual cash value if repaired or replaced at "your" expense within a reasonable time.

The value of tenant's improvements losses will be based on a portion of "your" original cost if not repaired or replaced within a reasonable time. This portion is determined as follows:

a. divide the number of days from the date of the loss to the expiration date of the lease by the number of days from the date of installation to the expiration date of the lease; and

b. multiply the figure determined in 8.a. above by the original cost.

If "your" lease contains a renewal option, the expiration of the lease in this procedure will be replaced by the expiration of the renewal option period.

Tenant's improvements losses are not covered if repaired or replaced at another's expense.

9. **Valuable Papers and Records** -- The value of "valuable papers and records", including those which exist on electronic or magnetic media, is based on the cost of blank materials for reproducing the records, and the labor to transcribe or copy the records when there is a duplicate.

## HOW MUCH WE PAY

1. **Insurable Interest** -- "We" do not cover more than "your" insurable interest in any property.

2. **Deductible** -- "We" pay only that part of "your" loss over the deductible amount stated on the 'declarations' in any one occurrence.

The deductible applies to the loss before application of any coinsurance or reporting provisions.

3. **Loss Settlement Terms** -- Subject to paragraphs 1., 2., 4., and 5. under How Much We Pay and coinsurance provisions (if applicable), "we" pay the lesser of:

NARS

DEC 1 1 2001

a.  the amount determined under Valuation;

b.  the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

c.  the "limit" that applies to covered property.

For accounts receivable, "we" will pay the lessor of:

a.  the sum of all accounts receivable due (with reasonable deductions);

b.  the reasonable cost to reconstruct "your" accounts receivable records; or

c.  the applicable "limit".

4.  Insurance Under More Than One Coverage – If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim, loss, or damage sustained.

5.  Insurance Under More Than One Policy – "You" may have another policy subject to the same plan, terms, conditions, and provisions as this policy. If "you" do, "we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

If there is another policy covering the same loss, other than that described above, "we" will pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" will not pay more than the applicable "limit".

## LOSS PAYMENT

1.  Our Options -- "We" have the following options:

a.  pay the value of the loss;

b.  pay the cost of repairing or replacing the loss;

c.  rebuild, repair, or replace with property of like kind and quality, to the extent practicable, within a reasonable time;

d.  take all or any part of the damaged property at the agreed or appraised value.

"We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2.  Your Losses -- "We" will adjust all losses with "you". Payment will be made to "you" unless another loss payee is named in the policy. An insured loss will be payable 30 days after a satisfactory proof of loss is received, and the amount of the loss has been established either by written agreement with "you" or the filing of an appraisal award with "us".

3.  Property of Others -- Losses to property of others may be adjusted with and paid to:

a.  "you" on behalf of the owner; or

b.  the owner.

If "we" pay the owner, "we" do not have to pay "you". "We" may also choose to defend any suits arising from the owners at "our" expense.

NARS
DEC 1 1 2001

AAIS
COP-100 Ed 2.0
Page 19 of 21

## OTHER CONDITIONS

In addition to the 'terms' which are contained in other sections of the Commercial Output Program Coverages the following conditions apply.

1. Appraisal — If 'you' and 'we' do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.

   If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity, within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, 'you' or 'we' can ask a judge of a court of record in the state where the property is located to select an umpire.

   The appraisers will then determine and state separately the amount of each loss.

   The appraisers will also determine the value of covered property items at the time of the loss, if requested.

   If the appraisers submit a written report of any agreement to 'us', the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of the loss.

   Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by 'you' and 'us'.

2. Benefit to Others — Insurance under the Commercial Output Program Coverages shall not directly or indirectly benefit anyone having custody of 'your' property.

3. Conformity With Statute — When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

4. Control of Property — The Commercial Output Policy Coverages are not affected by any act or neglect beyond 'your' control.

5. Death — If 'you' die, 'your' rights and duties will pass to 'your' legal representative but only while acting within the scope of duties as 'your' legal representative. Until 'your' legal representative is appointed, anyone having proper temporary custody of 'your' property will have 'your' rights and duties but only with respect to that property.

6. Liberalization — If a revision of a form or endorsement which broadens Commercial Output Program Coverages without additional premium is adopted during the policy period, or within six months before this coverage is effective, the broadened coverage will apply.

7. Misrepresentation, Concealment, or Fraud — These Commercial Output Program Coverages are void as to 'you' and any other insured if, before or after a loss:

   a. 'you' or any other insured have willfully concealed or misrepresented:

      1) a material fact or circumstance that relates to this insurance or the subject thereof; or

      2) 'your' interest herein; or

   b. there has been fraud or false swearing by 'you' or any other insured with regard to a matter that relates to this insurance or the subject thereof.

NARS
DEC 1 1 2001

AAIS
COP-100 Ed 2.0
Page 20 of 21

8. **Policy Period** – 'We' pay for a covered loss that occurs during the policy period.

9. **Recoveries** – If 'we' pay 'you' for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. 'you' must notify 'us' promptly if 'you' recover property or receive payment.

   b. 'we' must notify 'you' promptly if 'we' recover property or receive payment.

   c. any recovery expenses incurred by either are reimbursed first.

   d. 'you' may keep the recovered property but 'you' must refund to 'us' the amount of the claim paid, or any lesser amount to which 'we' agree.

   e. if the claim paid is less than the agreed loss due to a deductible or other limiting 'terms' of this policy, any recovery will be pro rated between 'you' and 'us' based on our respective interest in the loss.

10. **Restoration of Limits** – Any loss 'we' pay under the Commercial Output Program Coverages does not reduce the 'limits' applying to a later loss.

11. **Subrogation** – If 'we' pay for a loss, 'we' may require 'you' to assign to 'us' 'your' right of recovery against others. 'You' must do all that is necessary to secure 'our' rights. 'We' will not pay for a loss if 'you' impair this right to recover.

    'You' may waive 'your' right to recover from others in writing before a loss occurs.

12. **Suit Against Us** – No one may bring a legal action against 'us' under this coverage unless:

    a. all of the 'terms' of the Commercial Output Program Coverages have been complied with; and

    b. the suit has been brought within two years after 'you' first have knowledge of the loss.

       If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by the law.

13. **Territorial Limits** – 'We' cover property while in the United States of America, its territories and possessions, Canada, and Puerto Rico.

14. **Mortgage Provisions** – If a mortgagee (mortgage holder) is named in this policy, loss to building property shall be paid to the mortgagee and 'you' as their interest appears. If more than one mortgagee is named, they shall be paid in order of precedence.

    The insurance for the mortgagee continues in effect even when 'your' insurance may be void because of 'your' acts, neglect, or failure to comply with the coverage 'terms'. The insurance for the mortgagee does not continue in effect if the mortgagee is aware of changes in ownership or substantial increase in risk and does not notify 'us'.

    If 'we' cancel this policy, 'we' will notify the mortgagee at least ten days before the effective date of cancellation if 'we' cancel for 'your' nonpayment of premium, or 30 days before the effective date of cancellation if 'we' cancel for any other reason.

    'We' may request payment of the premium from the mortgagee, if 'you' fail to pay the premium.

    If 'we' pay the mortgagee for a loss where 'your' insurance may be void, the mortgagee's right to collect that portion of the mortgage debt from 'you' then belongs to 'us'. This does not affect the mortgagee's right to collect the remainder of the mortgage debt from 'you'.

NARS

DEC 1 1 2001

AAIS
COP-100 Ed 2.0
Page 21 of 21

As an alternative, 'we' may pay the
mortgagee the remaining principal and
accrued interest in return for a full
assignment of the mortgagee's interest and
any instruments given as security for the
mortgage debt.

If 'we' choose not to renew this policy, 'we'
will give written notice to the mortgagee at
least ten days before the expiration date of
this policy.

15. **Vacancy - Unoccupancy — 'We'** do not
pay for loss caused by attempted theft;
breakage of building glass; sprinkler
leakage (unless 'you' have protected the
system against freezing); theft; vandalism;
or water damage occurring while the
building or structure has been:

    a. vacant for more than 60 consecutive
    days; or

b. unoccupied for more than:

    1) 60 consecutive days; or
    2) the usual or incidental unoccupancy
    period for the 'covered locations'.

    whichever is longer.

The amount 'we' will pay for any loss that
is not otherwise excluded will be reduced
by 15%.

Unoccupied means that the customary
activities or operations at the 'covered
location' are suspended, but business
personal property has not been removed.
The building or structure shall be
considered vacant and not unoccupied
when the occupants have moved, leaving
the building or structure empty or
containing only limited business personal
property. Buildings or structures under
construction are not considered vacant or
unoccupied.

COP-100 Ed 2.0
Copyright MCMXCV
American Association of Insurance Services

NARS
DEC 1 1 2001

Form CCOP01

Changes to Commercial Output Program – Property Coverage Part, COP-100 Ed2.0

THESE ARE IMPORTANT CHANGES TO POLICY TERMS AND CONDITIONS --
PLEASE READ CAREFULLY

1. BUSINESS PERSONAL PROPERTY, page 3, item 6 is deleted and replaced with the following:
" 'Mobile Equipment', if not covered by other insurance and if used principally on the described premises."

2. PROPERTY NOT COVERED, page 4, item 1 is deleted and replaced with the following: "We do not cover airborne or waterborne personal property."

3. PROPERTY NOT COVERED, page 4, item 2 is deleted and replaced with the following: "We do not cover aircraft or watercraft (including their motors, equipment, and accessories) or railroad rolling stock."

4. PROPERTY NOT COVERED, page 4, item 3 is deleted and replaced with the following: "We do not cover animals including birds and fish."

5. PROPERTY NOT COVERED, page 4, item 8, part a. is amended by adding "standing timber, lawns, trees, shrubs and plants."

6. PROPERTY NOT COVERED, page 4, is amended by adding the following:

"13. We do not cover bridges, roadways, walks, patios, or other paved surfaces or pilings, piers, wharves or docks."

"14. We do not cover foundations of buildings, machinery or boilers if their foundations are below (1) the lowest basement floor; or (2) the surface of the ground if there is no basement."

"15. We do not cover retaining walls that are not part of the covered buildings."

7. ADDITIONAL COVERAGES, page 5, item 1 DEBRIS REMOVAL is amended by changing the additional amount from $5000 to $25,000.

8. SUPPLEMENTAL COVERAGES, page 6, item 2 BRANDS AND LABELS EXPENSE, the second paragraph is deleted in its entirety.

9. SUPPLEMENTAL COVERAGES, page 6, item 4 FOUNDATIONS OF BUILDINGS, PILINGS AND UNDERGROUND PIPES is deleted in its entirety.

10. SUPPLEMENTAL COVERAGES, page 6, item 5 INVENTORY AND APPRAISALS EXPENSE is deleted in its entirety.

11. SUPPLEMENTAL COVERAGES, page 7, item 6 NEWLY ACQUIRED BUILDINGS is amended as follows: 60 days is substituted for 90 days in the second paragraph; and the limit of liability in the fourth paragraph is amended from $500,000 to 25% of Total Insurable Value up to a maximum of $250,000.

**NARS**

**DEC 1 1 2001**

Form CCOP01

Changes to Commercial Output Program – Property Coverage Part, COP-100 Ed2.0

THESE ARE IMPORTANT CHANGES TO POLICY TERMS AND CONDITIONS --
PLEASE READ CAREFULLY

12. SUPPLEMENTAL COVERAGES, page 7, item 7 ORDINANCE OR LAW is deleted in its entirety and replaced by endorsement No. CP 04 05 10 00.

13. SUPPLEMENTAL COVERAGES, page 8, item 9 PERSONAL PROPERTY – ACQUIRED LOCATIONS is amended as follows: 60 days is substituted for 90 days in the second paragraph.

14. SUPPLEMENTAL COVERAGES, page 8 item 10 TREES, SHRUBS AND PLANTS is amended as follows: $5000 is substituted for $50,000 in the second paragraph.

15. SUPPLEMENTAL MARINE COVERAGES, page 8, item 2 FINE ARTS is deleted in its entirety and replaced with the following: "We pay up to $50,000 for 'your' 'fine arts' at 'covered locations' if listed in a schedule on file with us."

16. SUPPLEMENTAL MARINE COVERAGES, page 9, item 5 SALES REPRESENTATIVE SAMPLES is deleted in its entirety.

17. PERILS EXCLUDED, page 10, item g WATER is amended as follows: Subparagraph 2) is deleted.

18. EXCLUSIONS, page 12, item 1. NEGLECT is deleted in its entirety.

19. ADDITIONAL PROPERTY NOT COVERED OR SUBJECT TO LIMITATIONS, page14 item 4 FURS is amended as follows: $2500 is substituted for $10,000.

20. ADDITIONAL PROPERTY NOT COVERED OR SUBJECT TO LIMITATIONS, page14 item 8 JEWELRY, ETC. is amended as follows: $2500 is substituted for $10,000.

21. ADDITIONAL PROPERTY NOT COVERED OR SUBJECT TO LIMITATIONS, page14 item 11 STAMPS, ETC. is amended as follows: $250 is substituted for $5,000.

22. WHAT MUST BE DONE IN CASE OF LOSS, page 15, the following item is added: 10. " 'You' must promptly send us any legal papers or notices received concerning the loss."

23. VALUATION, page 16, item 2 REPLACEMENT COST is amended as follows: The third paragraph is deleted in its entirety and replaced with the following: " Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced. If repairs or replacement are not made as soon as reasonably possible after the loss, the value of the property will be at actual cash value."

NARS

DEC 1 1 2001



DAVIS & RUBIN

ATTORNEYS AT LAW

ROGER S. DAVIS
JOEL S. RUBIN (1948-1991)

ONE BOWDOIN SQUARE
SUITE 901
BOSTON, MASSACHUSETTS 02114-2919
(617) 742-4300
FACSIMILE (617) 742-4304

**VIA CERTIFIED MAIL RRR**
**7004 1160 0006 4306 5360**

April 6, 2005

Clarendon National Insurance Company
1177 Avenue of the Americas
New York, NY 10036

Re:   Timothy M. McNamara
Vs:   74 Kent Street, LLC

Dear Sir/Madam:

Please be advised that I represent Timothy McNamara the owner of Unit C14,
74 Kent Street, Brookline, Massachusetts. Your company is the insurer of a
property insurance policy on which the named insured is 74 Kent Street, LLC.
Mr. McNamara as the owner of Unit C14 is the holder of an insurable interest
in such policy. This is a formal demand sent to you, pursuant to the
provisions of Massachusetts General Laws c.93A §9 and is a demand for relief
for damages in behalf of my client for unfair and/or deceptive practices
employed by your company regarding the claim of my client for compensation
for his loss of property and for repairs to his condominium unit. Generally, all
unfair and deceptive practices in the conduct of any business are declared
unlawful by G.L. c.93A and c.176D §3.

Your company is well aware of the situation in that it has been involved in prior
litigation, namely the case of <u>McNamara v. Clarendon Nat'l Ins. Co.</u>, Norfolk
Superior Court, C.A. No. 03-0312, and after protracted and costly litigation,
that case was ultimately settled for a total amount of $126,548. That case did
not involve 74 Kent Street, LLC nor did the settlement operate as a release as
to 74 Kent Street, LLC. The facts in this case are well known to your company,
and are as follows:

1.   74 Kent Street, LLC was the builder and developer of the condominium
     at 74 Kent Street, which included Unit C14.

2.   On or about February 1, 2002, Steven Wolberg entered into a Purchase
     and Sales Agreement with Mr. McNamara to sell him Unit C14 for
     $620,000.

3.   The Agreement included an assignment by Wolberg to McNamara of all
     warranties, which included the Brookline Village Lofts Condominium
     Limited Warranty for 74 Kent Street, LLC, covering the electrical and
     plumbing system for a period of one year from the date of closing.

Clarendon Nat'l Ins. Co./McNamara v. 74 Kent St., LLC
April 6, 2005/Page Two

4.  McNamara took title on or about April 1, 2002 to Unit C14. On October 9, 2002, the sprinkler device malfunctioned flooding the entire premises with a large volume of water, destroying the structure and its interior and causing significant mold damage.

5.  Clarendon paid McNamara a total of $126,548.21 in settlement of his claims for damage to the structure. In the release signed by McNamara, he did release an entity known as Resource Capital Group with respect to damages to the structure, but not as to any claims for loss of use or damage to personal property. Furthermore, in no way was there any release to 74 Kent Street, LLC.

Mr. McNamara has expended approximately $204,000.00 to have Unit C14 restored and rebuilt, which is approximately $77,000.00 more than the total amount paid by Clarendon to settle the claims in the previous legal action. In addition, Mr. McNamara has suffered losses of personal property totaling $132,294.

Prior to this letter, I notified your company by letter dated March 9, 2005 advising our position to consider a settlement before bringing legal action and have not received had any reply.

In accordance with the provisions of c.93A §9, I am making demand that your company pay to Mr. McNamara the amount of $209,294 within thirty (30) days from the date of receipt hereof.

Your failure to comply with this demand will result in our commencing a court action to obtain relief, pursuant to c.93A §9, for negligence,as well as for other relevant causes of action. According to the express provisions of c.93A §9 my client is entitled to commence a civil action to recover the damages to which he may be entitled by reason of the acts set forth above after the expiration of the aforesaid thirty (30) day period, unless a written tender of settlement is made by your company during such thirty (30) day period and such tender is of a reasonable amount under the circumstances. In this case, the reasonable amount which we believe is appropriate is $209,294.

I further advise you that in the event that it becomes necessary to take legal action we will seek as a consequence of the statutory violations enumerated above, including treble damages, interest, attorney's fees, costs and expenses.

Very truly yours,

Roger S. Davis

RSD:cat
cc:    Office of the Attorney General

MCNAMARA4.74KS-CNIC